UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |  |
|---|---|---|
| SCOTT AND WHITE HEALTH PLAN AND SHA, LLC d/b/a FIRSTCARE<br><br>Plaintiffs and Counterclaim Defendants<br><br>v.<br><br>ACTIAN CORPORATION,<br><br>Defendant and Counterclaim Plaintiff | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No: 6:21-CV-1137-ADA-JCM |

## FIRST SUPPLEMENTAL COUNTERCLAIMS OF ACTIAN CORPORATION

Defendant Actian Corporation ("Actian"), by and through its attorneys, files its First Supplemental Counterclaims to the Complaint filed by Scott and White Health Plan and SHA, LLC d/b/a FirstCare (collectively, "Plaintiffs").

## FIRST SUPPLEMENTAL COUNTERCLAIMS OF ACTIAN CORPORATION

1.      Pursuant to Fed. R. Civ. P. 13, Counter-Plaintiff Actian Corporation ("Actian" or "Defendant") complains and alleges the following claims and allegations against plaintiffs Scott and White Health Plan ("SWHP") and SHA, LLC d/b/a FirstCare ("First Care") (collectively, "Plaintiffs").

2.      "We hold ourselves to a higher standard."

3.      "We will comply with software licensing agreements, which govern the use of the software."

4.      These statements are from Baylor Scott & White Health CEO Jim Hinton, in the

1

November, 2020 Code of Conduct.

5.      In reality, the opposite is true. Defendants do not hold themselves out to a higher standard, but violate their longstanding written commitments. As seen in this case, they do not comply with their software licensing agreements. And when they are found out, they do everything except uphold their duties.

6.      Far from adhering to their own purportedly "faith-based" standards, for years, Plaintiffs concealed their willful infringement of Actian's copyrighted computer programs – knowingly violating the material, express promises contained in negotiated and signed agreements. For years, Plaintiffs repeated the concealment, and even signed renewal agreements whose terms prohibited the lucrative uses for which that Plaintiffs knew they were exploiting Actian's Software.

7.      Recently Actian, a small but long-respected database software company, uncovered the truth and brought it to Plaintiffs' attention. In complete defiance of their longstanding written promises, their own publicly pronounced ethical standards, and in total disrespect of Actian's basic rights, Plaintiffs chose to use their money and lawyers rather than simply acting truthfully. In their arrogance, they dragged Texas courts into their powerplay. Their lawsuit against Actian is the shameful attempt by a powerful player, to cloak its illegality in a show of false legitimacy.

## **PARTIES**

8.      Defendant Actian Corporation is a Delaware corporation with its principal place of business in Silicon Valley, California. Actian is a computer software company whose primary focus is hybrid data management, integration, and analytics.

9.      Based on its allegations in the Complaint, SWHP is a Texas LLC having

headquarters at 1206 West Campus Drive, Bell County, Temple, TX 76502, and is in the business of providing health insurance plans to Texas residents.

10.     Based on its allegations in the Complaint, First Care, a wholly owned subsidiary of SWHP, is a Texas limited liability company having a headquarters at 1206 West Campus Drive, Bell County, Temple, TX 76502, and is also in the business of providing health insurance plans to Texas residents.

11.     Actian is informed and believes, and on that basis alleges, that at all relevant times, each of the Plaintiffs was, and is, the agent, servant and/or employee of each of the other Plaintiffs, and that all of the things alleged to have been done by each Counter-Defendant were done in the capacity of and as agent of the other Counter-Defendant.

12.     Actian is informed and believes, and on that basis alleges that Plaintiffs were each acting as the agents of each other, are alter egos, and are therefore jointly and severally liable for the counterclaims asserted by Actian.

## JURISDICTION AND VENUE

13.     Jurisdiction and venue are not proper in this District but rather in the Northern District of California. The parties entered into an agreement, which provided that "Any action related to this Agreement shall be governed by California law and controlling U.S. federal law, and the choice of law rules of any jurisdiction shall not apply. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. The venue for any claims arising under this Agreement shall be the federal courts located in the Northern District of California or the state courts located in Santa Clara County, California, and the parties agree to submit to the exclusive jurisdiction of such courts."

14.     That clause, in which Plaintiff consented to California law and to exclusive

jurisdiction and venue in the Northern District of California, is in the same agreement that Plaintiffs cite to and rely upon in their Complaint.

15.     While venue and jurisdiction are not proper in this District, and without waiving its arguments for transfer to the Northern District of California, Actian pleads in the alternative that this Court could in theory exercise personal jurisdiction over Plaintiffs, inter alia, because Plaintiffs have submitted to personal jurisdiction herein by filing their Complaint within this District. In addition, this Court could also in theory exercise subject matter jurisdiction over these counterclaims.

## FACTS

16.     Plaintiff Actian is a computer software company located in the Silicon Valley area of California, whose primary focus is hybrid data management, integration, and analytics. Actian is renowned for its innovative data management, integration, and analytics technologies. Actian has an installed base of over 5,000 customers including large global enterprises, public sector entities, and small to medium enterprises.

### The License Agreements

17.     Plaintiffs have been continuously licensing copies of Actian's computer programs for many years. These computer programs have included products within Actian's DataConnect family of software products ("the Software"), also referred to as "DataIntegrator", "DI", or "DC." Plaintiffs began licensing copies of version 10 of the Software in 2014 (the "v10 Software"), but subsequently entered into additional agreements to license copies of version 11 of the Software.

18.     Use of the Software is governed by an Actian-standard license agreement, which is included in the Software's installation package and incorporated into Plaintiffs' orders for their

Software licenses. The license agreement associated with the v10 Software is attached hereto as Exhibit A (the "v10 License Agreement"), and the license agreement associated with the v11 Software (the "v11 License Agreement") is attached hereto as Exhibit B. The v10 License Agreement and v11 License Agreement are referred to herein collectively as the "License Agreements."

19.    Plaintiffs agreed to the terms of the License Agreements when downloading and installing versions of the Software. For example, when downloading and installing the v10 Software, Plaintiffs agreed to the terms of the v10 License Agreement, and when downloading and installing the v11 Software, Plaintiffs agreed to the terms of the v11 License Agreement.

<p style="text-align:center">The 2018 Agreement</p>

20.    On June 27, 2018, Plaintiffs ordered Software licenses in a duly signed written agreement with Actian entitled "Order Confirmation" having Order Number 727274 ("2018 Agreement," attached as Exhibit C). The 2018 Agreement was signed by Plaintiffs' President and CEO at the time, Darnell Dent. In the 2018 Agreement, Plaintiffs purchased licenses to copies of Version 11 of the Software ("v11 Software") along with support services and maintenance for the v11 Software, as well as a one-year continuation of support services and maintenance for the v10 Software licenses that Plaintiffs had previously purchased.

21.    In the 2018 Agreement, Plaintiffs purchased "3 Engines" to the Software, where "1 Engine is restricted to 1 Concurrent Integration."

22.    Plaintiffs agreed, in Section 2 of the 2018 Agreement, that any licenses Plaintiffs had to the v10 Software would "be terminated effective as of March 29, 2019." And Plaintiffs expressly agreed to "de-install[ ] after such date unless [Plaintiffs] purchase[ ] support for DataConnect v.10 after such date." In Section 2, Plaintiffs further expressly agreed that they

"may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version."

23.     Plaintiffs further expressly agreed, in Section 3 of that duly signed 2018 Agreement, not to use the Software for purposes outside of "internal business purposes only," and agreed that they would not:

> . . . (ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) service, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products; or (iv) use the Product to process data for third parties (e.g., performing data migrations, conversions, or transformations for [Plaintiffs'] customers).

24.     Section 1 of the 2018 Agreement provided that "ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF … THE LICENSE AGREEMENT ASSOCIATED WITH" the Software. This refers to the License Agreements. The 2018 Agreement therefore incorporates the terms of the License Agreements (the v10 License Agreement with respect to the v10 Software, and the v11 License Agreement with respect to the v11 Software).

25.     The License Agreements also include the same prohibition on third-party and commercial use of the Software, for example in Section 2.2(i) of the v10 License Agreement and Section 2.2(i) of the v11 License Agreement.

26.     The 2018 Agreement also referenced and incorporated "Actian's Corporation Support Policy: https://supportservices.actian.com/support-services/support#policy" (the "Support Policy," attached hereto as Exhibit D). Consistent with the express promise that Plaintiffs made in the body of the 2018 Agreement, just above their own signature, the Support

Policy also included an express provision requiring customers to purchase support for perpetual licenses of the same product: "When acquiring Support Services for a perpetual license, all licenses of the same product (irrespective of version) must be supported under an active Actian Support contract. You may not support only a subset of licenses of the same product; those licenses left unsupported must be terminated."

<div align="center">The 2019 Agreement</div>

27.     Plaintiffs entered into two annual agreements with Actian in 2019. On April 11, 2019, Plaintiffs entered into an agreement with Actian entitled "Sales Order Confirmation: 729938" (the "April 2019 Agreement," attached hereto as Exhibit E). The April 2019 Agreement was signed by Plaintiffs' new President and CEO at the time, Jeffrey C. Ingrum. Under it, Plaintiffs renewed the support and maintenance for the v11 Software for another calendar year until June 30, 2020.

28.     On May 29, 2019, Plaintiffs entered into another annual agreement with Actian entitled "Sales Order Confirmation: 756901" (the "May 2019 Agreement," attached hereto as Exhibit F). The May 2019 Agreement was signed by Plaintiffs' Vice President of Strategic Sourcing, Janet Watson. Under it, Plaintiffs added ten additional Software copy licenses for the v11 Software, with associated support and maintenance for a term lasting until June 30, 2020.

29.     Both 2019 Agreements incorporated Actian's support policy terms and the License Agreements in the same manner as the 2018 Agreement.

<div align="center">The 2020 Agreement</div>

30.     Plaintiffs entered into yet another annual agreement with Actian on June 30, 2020, entitled "Sales Order Confirmation: 763298" (the "2020 Agreement," attached hereto as Exhibit G). The 2020 Agreement was executed by Plaintiffs' "Director Commodities" at the time, Ali

<div align="center">7</div>

Kheirandish. In the 2020 Agreement, Plaintiffs renewed Actian's support and maintenance services for the v10 Software and the v11 Software for another calendar year until June 30, 2021.

31.     Section 1 of the 2019 Agreement provided that "ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF … THE LICENSE AGREEMENT ASSOCIATED WITH" the Software, which again referenced and incorporated the terms of the License Agreements.

32.     In Section 2 of the 2020 Agreement, Plaintiffs made a very explicit representation and warranty: "Customer represents, warrants and agrees that if Customer does not purchase support for Data Integrator v.10 for the period after June 30, 2021, the Data Integrator v.10 licenses shall be terminated effective as of June 30, 2021. Upon Actian's request, Customer shall provide Actian with such de-installation certificate signed by an authorized signatory of Customer."

33.     In Section 2 of that signed written 2020 Agreement, Plaintiffs reaffirmed their ongoing promise that they "may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version."

<u>**Termination of the v10 Licenses**</u>

34.     In Section 2 of the 2020 Agreement, Plaintiffs represented, warranted and agreed that if they "do[] not purchase support for Data Integrator v.10 for the period after June 30, 2021, the Data Integrator v.10 licenses shall be terminated effective as of June 30, 2021."

35.     Plaintiffs did not purchase support for Data Integrator v.10 for the period after June 30, 2021. Accordingly, the Data Integrator v.10 licenses terminated on June 30, 2021.

36.     Plaintiffs failed to provide Actian an officer's certificate attesting that that they

had uninstalled, nor could they have because they did not uninstall the Software but rather continued to use it.

**Actian's Discovery of Plaintiffs' Breaches and Unlicensed Uses of the Software**

37.    The 2018 Agreement, the April 2019 Agreement, the May 2019 Agreement, the 2020 Agreement – which incorporate the License Agreements and Support Policy – comprise the parties' "Agreements."

38.    Section 9.6(i) of the License Agreements state that Plaintiffs agree to perform a self-audit upon 10 working days prior written notice from Actian, on the self-audit form made available by Actian. Accordingly, on March 10, 2021, Actian sent Plaintiffs Actian's self-audit form. Plaintiffs breached by not returning the self-audit form in ten days.

39.    Plaintiffs took nearly three months to return Actian any type of substantive response. At length, on June 4, 2021, Plaintiffs finally returned a partially filled-out self-audit form to Defendants.

40.    In the partially filled-out self-audit form, Plaintiffs admitted that they used the Software to "Share Data with Vendors/Customers via Files" and "Update [Plaintiffs'] Adjudication System." Plaintiffs further admitted several technical use cases, including to "Extract Data from [Plaintiffs'] Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors" and "Load Data into adjudication system (HealthRules) using Web Services."

41.    Plaintiffs also admitted running "4-5 integrations at a time at peak processing."

42.    In June 2021, Actian held a teleconference with Plaintiffs to discuss the information on their self-audit form. During that call, Plaintiffs admitted that they still had the v10 Software deployed, despite reporting on their self-audit form that they only had the v11

Software deployed. Plaintiffs' continued use of the v10 Software was further confirmed on June 28, 2021 in correspondence from Brennan Davis, Plaintiffs' Commodities Director and in subsequent discussions with Plaintiff.

43.     Thus, in the self-audit form returned by Plaintiffs on June 4, 2021 and subsequent teleconferences and correspondence, Actian learned for the first time that Plaintiffs have been in breach of the Agreements and were using the Software outside the scope of their license. In particular, Plaintiffs have been in breach, including without limitation by the following:

    a.   Plaintiffs' use of the Software to "Share Data with Vendors/Customers via Files", "Update [Plaintiffs'] Adjudication System", "Extract Data from [Plaintiffs'] Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors", and "Load Data into adjudication system (HealthRules) using Web Services," breaches Section 2.2(i) of the License Agreements, which provides that Plaintiffs may not "(ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products… [or] (vii) use the Product to process data for third parties (e.g., data performing data migrations, conversions, or transformations for Your customers)."

    b.   Plaintiffs' use of the Software to "Share Data with Vendors/Customers via Files", "Update [Plaintiffs'] Adjudication System", "Extract Data from [Plaintiffs']

Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors", and "Load Data into adjudication system (HealthRules) using Web Services," breaches Section 3 of the 2018 Agreement, which prohibits any use of the Software to " in any way to benefit third parties," or to "process data for third parties (e.g., performing data migrations, conversions, or transformations for [Plaintiffs'] customers)."

c. Running "4-5 integrations at a time at peak processing," outside the scope of Plaintiffs' license under the 2018 Agreement to only three Engines, where "1 Engine is restricted to 1 Concurrent Integration."

d. On information and belief, continuing to use v10 Software after June 30, 2021 in violation of Section 2 of the 2020 Agreement, which provides that "if Customer does not purchase support for Data Integrator v.10 for the period after June 30, 2021, the Data Integrator v.10 licenses shall be terminated effective as of June 30, 2021." Plaintiffs are using v10 Software as evidenced by, for example, their allegation that they are currently using the Software under a 2014 agreement, which would apply to software versions prior to v11 Software.

e. On information and belief, deploying v10 Software and v11 Software simultaneously, in violation of Section 2 of the 2020 Agreement, which provides that Plaintiffs "may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version." Plaintiffs are using v10 Software as evidenced by, for example, their allegation that they are currently using the Software under a 2014 agreement, which would apply to software versions prior to v11 Software.

44.     According to the express written terms of the 2020 Agreement, the Software license in the 2018 Agreement and any pre-existing rights to use any of the Software would expire on June 30, 2021 unless Plaintiffs purchased ongoing support.

45.     Actian had no duty to forgive Plaintiffs' infringement or permit any ongoing use, following the revelations in Plaintiff's self-audit form and follow-up discussions. Nonetheless, in the interest of moving forward Actian promptly provided Plaintiffs with a generous proposal to continue providing support, and allow Plaintiffs to continue using the Software copies.

46.     Plaintiff criticized the proposal and failed to honor the law, the Agreements, or their legal duties, or provide any substantive reply at all – until 6:50pm on the last day of their license – June 30, 2021, when Defendants made a facially unreasonable proposal that ignored their ongoing egregious infringement of Actian's intellectual-property rights.

47.     In the midst of Plaintiff personnel posing as negotiating a resolution with Actian, and without any warning, Plaintiff filed this lawsuit in a Texas court.

## COUNT I
## BREACH OF CONTRACT
**(Against Plaintiffs Scott and White Health Plan and SHA, LLC)**

48.     Actian restates and incorporates by reference every allegation of the preceding Paragraphs.

49.     A contract exists between Actian and Plaintiffs, as embodied in the 2018 Agreement, the 2019 Agreements, and the 2020 Agreements, which reference and incorporate the License Agreements and Support Policy. Actian has fulfilled its obligations under the Agreements.

50.     Plaintiffs materially breached the Agreements by engaging in wrongful conduct, including without limitation the following (collectively, the "Breaches"):

a.   Plaintiffs' use of the Software to "Share Data with Vendors/Customers via Files", "Update [Plaintiffs'] Adjudication System", "Extract Data from [Plaintiffs'] Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors", and "Load Data into adjudication system (HealthRules) using Web Services," breaches Section 2.2(i) of the License Agreements, which provides that Plaintiffs may not "(ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products… [or] (vii) use the Product to process data for third parties (e.g., data performing data migrations, conversions, or transformations for Your customers)."

b.   Plaintiffs' use of the Software to "Share Data with Vendors/Customers via Files", "Update [Plaintiffs'] Adjudication System", "Extract Data from [Plaintiffs'] Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors", and "Load Data into adjudication system (HealthRules) using Web Services," breaches Section 3 of the 2018 Agreement, which prohibits any use of the Software to " in any way to benefit third parties," or to "process data for third parties (e.g., performing data migrations, conversions, or transformations for [Plaintiffs'] customers)."

c.   Running "4-5 integrations at a time at peak processing," outside the scope of Plaintiffs' license under the 2018 Agreement to only three Engines, where "1 Engine is restricted to 1 Concurrent Integration."

d.   On information and belief, continuing to use v10 Software after June 30, 2021 in violation of Section 2 of the 2020 Agreement, which provides that "if Customer does not purchase support for Data Integrator v.10 for the period after June 30, 2021, the Data Integrator v.10 licenses shall be terminated effective as of June 30, 2021." Plaintiffs are using v10 Software as evidenced by, for example, their allegation that they are currently using the Software under a 2014 agreement, which would apply to software versions prior to v11 Software.

e.   On information and belief, deploying v10 Software and v11 Software simultaneously, in violation of Section 2 of the 2020 Agreement, which provides that Plaintiffs "may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version." Plaintiffs are using v10 Software as evidenced by, for example, their allegation that they are currently using the Software under a 2014 agreement, which would apply to software versions prior to v11 Software.

f.   Such other breaches as may be identified by Actian.

51.   The Breaches are ongoing and occur on a regular basis.

52.   As a direct and proximate result of the Breaches, Actian has suffered harm and damages, including without limitation lost licensing revenue and lost fees.

53.     Actian is entitled to damages for the Breaches, including without limitation compensatory damages, indirect damages, and consequential damages.

54.     Actian is also entitled to prevailing party attorneys' fees.

**COUNT II**
**COPYRIGHT INFRINGEMENT**
**(Against Plaintiffs Scott and White Health Plan and SHA, LLC)**

55.     Actian restates and incorporates by reference every allegation of the preceding Paragraphs.

56.     Actian is the owner of valid copyrights in the Software, which are registered under Copyright Registration Nos. TX0008902355, TX0008902344, TX0008902360, TX0008902319, TX0008898417, TX0008899134 , TX0009058230, TX0009058232, TX0009260777, TX000926366, TX0009260358, TX0009260792, TX0009260352, TX0009260337, TX0009260337, TX0009260202, TX0009260786, TX0009260292, TX0009260356, and TX0009260304 (collectively, the "Copyrights"). Registration information for the Copyrights attached hereto as Exhibit H.

57.     Plaintiffs' ongoing and past unlicensed uses are outside the scope of the limited license granted by Actian in the Agreements. Such unlicensed uses of the Software constitute infringement of the Copyrights, and include without limitation the following (collectively, the "Infringements"):

      a.   On information and belief, deploying v10 Software and v11 Software simultaneously, in violation of Section 2 of the 2020 Agreement, which provides that Plaintiffs "may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version." Plaintiffs are using v10 Software as evidenced by, for

example, their allegation that they are currently using the Software under a 2014 agreement, which would apply to software versions prior to v11 Software.

b. Unlicensed uses of the Software to "Share Data with Vendors/Customers via Files";

c. Unlicensed uses of the Software to "Update [Plaintiffs'] Adjudication System";

d. Unlicensed uses of the Software to "Extract Data from [Plaintiffs'] Databases (SQL Server) and create files (X12, Json, Excel, Flat, XML) for vendors";

e. Unlicensed uses of the Software to "Load Data into adjudication system (HealthRules) using Web Services";

f.  Unlicensed uses of the Software to "run[ ] 4-5 integrations at a time at peak processing"; and

g. Unlicensed uses of the v10 Software after June 30, 2021;

h. Unlicensed simultaneous uses of the v10 Software and v11 Software; and

i. Such other unlicensed uses as may be identified by Actian.

58.    The Infringements occur daily and are ongoing to the present day.

59.    Plaintiffs' infringement was and continues to be willful and intentional.

60.    Plaintiffs have continued to exploit the Software in violation of Actian's exclusive copyright rights, constituting infringement of the Copyrights.

61.    As a direct and proximate result of Plaintiffs' wrongful conduct, Actian is entitled to damages in an amount to be proven at trial. Actian's damages include without limitation Actian's actual damages, profits attributable to infringement, statutory damages, willful infringement, and prevailing party attorneys' fees as set forth in 17 U.S.C. § 505 and under other relevant law.

## PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against Plaintiffs Scott and White Health Plan and SHA, LLC as follows:

1. For actual and compensatory damages in an amount to be proven at trial;

2. Indirect and consequential damages in an amount to be proven at trial;

3. For prejudgment interest on all damages awarded at the maximum allowable rate;

4. Finding that the Plaintiffs are liable for breach of contract;

5. Finding that Plaintiffs are liable for copyright infringement;

6. A preliminary and permanent injunction against Plaintiffs enjoining them and all of their officers, directors and personnel from further breaches of the Agreements;

7. A preliminary and permanent injunction against Plaintiffs enjoining them and all of their officers, directors and personnel from further acts of copyright infringement;

8. An award of Actian's actual damages for copyright infringement;

9. An award of Plaintiffs' profits attributable to copyright infringement;

10. An award of statutory damages for copyright infringement under to 17 U.S.C. § 504(c)(1);

11. A finding of willful and intentional copyright infringement, and an award of enhanced damages under 17 U.S.C. § 504(c)(2);

12. An award of all costs in this action;

13. An award of Actian's attorneys' fees as set forth in Texas Civil Practice and Remedies Code Section 38.001 and/or under other applicable law; and

14.     An award of Actian's attorneys' fees as set forth in the copyright statute, 17

U.S.C. § 505 and under other relevant law.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by

jury of any issues so triable by right.

Dated: September 12, 2023

By:  */s/ Ryan Hatch*
    Ryan E. Hatch
    Admitted Pro Hac Vice
    ryan@hatchlaw.com
    Hatch Law, PC
    13323 Washington Blvd., Suite 302 Los
    Angeles, CA 90066
    Tel: 310-279-5076

    Ryan Pierce
    State Bar No. 20435413
    Reeves & Brightwell LLP
    3711 South Mopac Expy, Bldg 1, Ste
    500 Austin, Texas 78746
    rpierce@reevesbrightwell.com
    (512) 334-4500 (Phone)
    (512) 334-4492 (Fax)

    *Attorneys for Defendant Actian Corporation*

EXHIBIT A

ACTIAN CORPORATION
CUSTOMER LICENSE AND SUPPORT SERVICES AGREEMENT

PLEASE READ THIS AGREEMENT CAREFULLY BEFORE DOWNLOADING
OR INSTALLING THE SOFTWARE.

This Customer License and Support Services Agreement
("Agreement") is a legal agreement between the end user
downloading or installing the software ("you") and
Actian Corporation, with its principal place of business
located at 2300 Geng Road, Suite 150, Palo Alto,
CA 94303 ("Us," "Our," or "We").  IF YOU ARE ENTERING
INTO THIS AGREEMENT ON BEHALF OF A COMPANY OR AN
ENTITY, YOU REPRESENT THAT YOU ARE THE EMPLOYEE OR
AGENT OF SUCH COMPANY OR ENTITY AND YOU HAVE THE
AUTHORITY TO ENTER INTO THIS AGREEMENT AND LEGALLY
BIND YOUR COMPANY OR ENTITY. For purposes of this
Agreement, "You" or "Your" includes you and any of
your companies or entities that you have bound under
this Agreement. BY DOWNLOADING, INSTALLING OR USING
THE SOFTWARE OR BY CLICKING THE "I ACCEPT" BUTTON BELOW
(OR TYPING "Y" OR "YES" IF YOU ARE INSTEAD ASKED FOR A
"Y OR N" RESPONSE), YOU ARE AGREEING TO BE BOUND BY
THIS AGREEMENT.  IF YOU DO NOT ACCEPT THE TERMS OF THIS
AGREEMENT, THEN YOU MUST CLICK ON THE "DECLINE" OR
"I DO NOT ACCEPT" BUTTON BELOW (OR TYPE "N" OR "NO" IF
YOU ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE) AND YOU
MAY NOT DOWNLOAD, INSTALL OR USE THE SOFTWARE.  This
Agreement governs the purchase and use of the software
and services described in an Order (defined below). The
"Effective Date" shall be deemed the date you click on
the "Accept" button below.

1.    DEFINITIONS.

1.1   "Documentation" means the user documentation
supplied by Us with the Product.

1.2   "Customer Subsidiaries" means those
companies which are Your wholly-owned subsidiary
on the Effective Date of this Agreement.
Wholly-owned subsidiary shall be defined as an entity
in which You own a 100% shareholding.

1.3   "Order" means a document typically titled
"Order Confirmation" or "Software and Support Services Order," executed by the parties,
that refers to this Agreement and describes in greater
detail Your order-specific information and use
restrictions including, but not limited to: Your billing

information, lists of Products and Support Services ordered, permitted number
of cores with which the Products can be used, and
pricing. Such Order(s) is (are) hereby incorporated into
this Agreement by reference.

1.4   "Outsourcer" means a third party engaged by You
for internal data processing, consulting, product
customization, or internal information management.

1.5   "Products" means the machine-readable object
code of the software programs specified in an Order,
together with any Documentation and Updates thereto.

1.6   "Subscription Term" means one year from the
date of the applicable Order or as otherwise specified
in the Order or an addendum to this Agreement.

1.7   "Support Services" means Product support services.

1.8   "Updates" means any update, release, or
enhancement that is provided to You at Our discretion
under Support Services.

1.9   "Warranty Period" means thirty (30) days from the
date of initial delivery to You of the applicable
Product (excluding Updates).

2.    LICENSE.

2.1   License Grant.  Provided that You comply with
the terms and conditions of this Agreement,
including, but not limited to the conditions stated
in Sections 2.2(i) – 2.2(iv), We grant You a
limited, non-exclusive, non-sublicensable and non-transferable license
to use the Products for Your business purposes during
the Subscription Term in accordance with the terms
and conditions of this Agreement with any restrictions stated
in an Order or attachment hereto, such as the number of copies
of the Products made or used by You, installed on Your
workstations or servers, or on the number of Your users or
the number of seats, sockets or cores accessing or using the
Product. For the avoidance of doubt, You have no right or license under this
Agreement to any use, copy, instance or version of a
Product or other software program, or support services
for a particular Product, unless such use, copy,
instance or version and such support services are covered
in a then-current Order or attachment thereto. You must ensure that any limits
on the number of cores/CPUs are not exceeded by platform
virtualization or other means. Customer Subsidiaries may
place Order(s) under this Agreement, provided that such

Order(s) reference this Agreement, and shall have the benefit of the Support Services as may be described in such Order(s), provided that:

i)  You will ensure that each of such Customer Subsidiaries is aware of and complies with the terms of this Agreement as though such Customer Subsidiaries were You, and You are liable and responsible for their acts and omissions; and

ii)  You will indemnify Us and keep Us fully and effectively indemnified against all costs, claims, demands, expenses and liabilities of whatsoever nature which We may sustain as a result of a failure by any Customer Subsidiaries to comply with the terms of this Agreement.

2.2   Product Use Rights.  The license granted in Section 2.1, above, is subject to the following conditions:

i) License Restrictions.  Except as expressly permitted by this Agreement, You may not: (i) distribute, lease, loan, sell, encumber, sublicense, or otherwise transfer a Product; (ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products; (iv) use a Product to develop a product which is competitive with any of the software programs manufactured and/or marketed by Us; (v) use a Product in the same production environment in which You deploy an open source version of the Product; vi) use the Products beyond the scope or term of any license; or (vii) use the Product to process data for third parties (e.g., data performing data migrations, conversions, or transformations for Your customers).  Actian Vector (formerly Vectorwise) cannot be used as a transactional database. You shall notify Us if You become aware of any unauthorized third party access to, or use of, a Product.

ii) Outsourcers.  You may permit access to, and use
of, the Products by an Outsourcer, provided that:
(i) the Outsourcer agrees to comply with the terms
of this Agreement and to access and use the Products
solely for purposes of rendering services to You; and
(ii) the total number of licenses used by You and
Outsourcer must not exceed the scope or number of licenses
purchased.  You shall be responsible and liable for
Outsourcer's compliance with the terms of this
Agreement.  Upon completion of Your services by
Outsourcer, You shall, upon Our request, certify in
writing that Outsourcer has un-installed and destroyed
all copies of Products within thirty (30) days of such
completion of services, and You will give Us any
reasonable assistance We may request to ensure
Outsourcer complies with this clause.

iii) Duplication of Product.  You may make Product
copies equal to the number of licensed copies
expressly authorized under this Agreement plus a
reasonable number of archival copies for inactive
backup purposes, provided that all Product copyright,
trademark, patent, and related proprietary notices
incorporated in or affixed to the Product shall be
duplicated by You on all copies or extracts thereof
and shall not be altered, removed, or obliterated.
Except as required to be permitted by applicable law,
reverse compiling (including reverse compiling to
ensure interoperability), reverse engineering and
other source code derivation of the Product is
prohibited. If You wish to exercise any right to
reverse engineer to ensure interoperability in
accordance with applicable law, You shall first
provide written notice to Us and permit Us, at Our
discretion, to make an offer to provide information
and assistance reasonably required to ensure Product
interoperability with Your other products for a fee
to be mutually agreed upon (if any).

iv) Product Ownership and Restrictions.  The copies
of Products provided hereunder are licensed, not sold,
and all intellectual property rights and title to the
Products shall remain with Us and Our suppliers
and no interest or ownership therein is conveyed to
You.  No right to create a copyrightable work, whether
joint or unitary, is granted or implied; this includes
works that modify (even for purposes of error
correction), adapt, or translate the Product or create
derivative works, compilations, or collective works
therefrom, except as necessary to configure the Product

using the menus, options and tools provided for such
purposes and contained in the Product. You shall not
attempt to circumvent any user limits or other license,
timing or use restrictions that are built in to the
Products. Certain items of software code provided along
with the Products are subject to "open source" licenses
("Third Party Code") provided with the Products.  The
Third Party Code is not subject to the terms and conditions
of this Agreement, except for Sections 5 and 6 of this
Agreement.  Nothing in this Agreement limits Customer's
rights under, or grants Customer rights that supersede
the terms and conditions of any applicable license for
the Third Party Code, including any rights to copy, modify
or distribute Third Party Code under the applicable license.
You are hereby notified that the Products may contain
time-out devices, counter devices, and/or other devices
intended to ensure the limits of a particular license will
not be exceeded ("Limiting Devices").  If the Products do
contain Limiting Devices, We shall ensure that You receive
any keys or other materials necessary to use the Products
to the limits of Your license.

2.3   Product Export. Any person or entity exporting
or re-exporting Products or services directly or
indirectly and via any means, including electronic
transfer, is wholly responsible for doing so in
accordance with the U.S. Export Administration
Regulations and the laws of host countries and You
agree to comply strictly with all such laws and
regulations. We assume no responsibility or liability
for Your failure to obtain any necessary export
approvals. Specifically, no Product or services may be
exported to embargoed or otherwise restricted countries
or end-users.  This provision shall survive the
expiration or earlier termination of this Agreement.

3.    SUPPORT AND ADDITIONAL SERVICES.

3.1   Support Services. The details of the Support
Services can be found at
http://supportservices.actian.com/support-services/support#policy.
We may suspend or terminate Support Services for all
Product(s) in the event that You do not pay fees
for Support Services when due.  If You purchase
Support Services for a Product, then You shall
purchase Support Services for all licenses and
copies of such Product. You may not use or access
support services (i) for a software product not covered
in a then-current Order, or (ii) for a Product not
covered by a then-current paid Actian support plan.

You may not use or access support services for the benefit of a third party, or provide access to or permit use of support services by a third party.

3.2   Additional Services.  Consulting services or training may be obtained by You on an as-available basis and at mutually agreed rates in accordance with a separate agreement.  Should We agree to provide consulting services, the payment of the Product license and Support Services fees under this Agreement shall not be contingent under any circumstances upon the performance of any such services including installation and implementation services.

4.    FEES; TAXES; PAYMENT TERMS; PURCHASE ORDERS; SHIPPING.

4.1   Fees.  Fees or other charges shall be as specified in an Order. All amounts payable under this Agreement shall be payable in advance, and shall be non-refundable and not subject to set off or deduction by You. In the event that You wish to renew the subscription of a Product, the applicable price shall be that stated within the then-current Actian price list, unless otherwise agreed between the parties.

4.2   Taxes.  Our fees are exclusive of, and You are responsible for, duties and taxes (other than taxes on Our income).

4.3   Invoicing and Payment.  All payments of fees and charges under this Agreement shall be made in U.S. dollars within thirty (30) days of the date of the applicable invoice sent to You by Us.  Any amount payable by You to Us hereunder which is past due may be subject to a late payment charge equal to one and a half percent (1.5%) per month, or the highest rate permitted by law, whichever is less.  The receipt or request for payment of such amounts shall not prejudice Our rights with respect to Your failure to pay on the due date.

4.4   Orders and Shipping.  We have no obligation to accept Purchase Orders, including without limitation Purchase Orders for renewal of Support Services. Any fulfillment of Purchase Orders shall be solely in accordance with the terms of this Agreement and We expressly reject any conflicting terms and conditions in Your Purchase Order. Products and

Documentation are shipped FOB origin, Our site.
Delivery will be by electronic or physical means,
at Our election, and all Products shall be deemed
accepted by You immediately upon the earlier of
download or receipt from Us.

5.    LIMITED WARRANTIES.

5.1   We warrant that, during the Warranty Period,
the Products (excluding Updates) will operate
substantially in conformity with the applicable
Documentation. Updates are not included within the
definition of Products for the purposes of any
Warranty or Warranty Period.

5.2   Within the Warranty Period, if You detect a
defect in a Product's physical media, You may return
the defective media to Us and We will replace it
free of charge.

5.3   Provided that We are notified in writing of a
Product's non-conformance with the warranty set forth
in section 5.1 within the applicable Warranty Period,
We shall, at Our option: a) repair or replace the
defective Product, or b) refund the license fees paid
for the Product in exchange for a return of the
defective Product. In the event of a refund Your
license to use the Product will immediately expire.
This Section 5.3 is Your exclusive remedy for breach
of the limited warranty in Section 5.1.  The above
warranties specifically exclude defects resulting
from accident, abuse, misapplication or unauthorized
repair, modifications, enhancements and installation
in an incompatible environment.  We do not warrant
that use of the Products will be uninterrupted or
error free.

5.4   EXCEPT FOR EXPRESS WARRANTIES STATED IN THIS
SECTION 5 AND TO THE MAXIMUM EXTENT PERMITTED BY LAW,
THE PRODUCTS AND SERVICES ARE PROVIDED "AS IS," AND
WE, AND OUR SUPPLIERS DISCLAIM ALL OTHER WARRANTIES
AND CONDITIONS, WHETHER EXPRESS OR IMPLIED OR
STATUTORY, INCLUDING WITHOUT LIMITATION, ANY IMPLIED
WARRANTY (I) OF MERCHANTABILITY OR SUITABILITY,
(II) OF FITNESS FOR A PARTICULAR PURPOSE, OR
(III) OF NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

6.    LIMITATION OF LIABILITY.

To the maximum extent permitted by applicable law, in

no event will We or Our Suppliers be liable to You or
any third party for any indirect, special, incidental,
consequential or punitive damages arising out of or
related to this Agreement, including without
limitation, any lost profits or revenues, loss or
inaccuracy of any data, or cost of substitute goods,
regardless of the theory of liability (including
negligence) and even if We have been advised of the
possibility of such damages. We and Our suppliers'
aggregate liability to You or any third party for
any cause whatsoever shall not exceed the total
fees paid by You to Us under this Agreement during
the 12 months preceding the date that the claim arose.
In no event shall You raise any claim under this
Agreement more than 2 years after (i) the discovery
of the circumstances giving rise to such claim; or
(ii) the effective date of the termination of this
Agreement. The limitations in this Section shall apply
even if any remedy fails of its essential purpose.
Nothing in this Agreement shall exclude or limit
either party's liability for death or personal injury
caused by that party's negligent act or omission or by
wilful default.

7.    THIRD PARTY CLAIMS.

7.1   We shall: (i) defend, or at Our option settle,
any legal proceeding brought against You to the extent
that it is based on a claim that a Product infringes a
third-party patent, trademark or copyright of the
country in which You take delivery of the
Product; and (ii) pay all damages and costs
finally awarded against You by a court of competent
jurisdiction to the extent attributable to such a
claim or agreed to by way of a settlement entered
into by Us, provided that: You (i) notify Us promptly
of each such claim; (ii) give Us sole control of the
defense and/or settlement of the claim; (iii) fully
cooperate with Us in the defense or settlement of the
claim; (iv) mitigate such damages and costs as far as
is reasonably possible; and (v) take no action that
may prejudice Our ability to defend the claim.

7.2   If all or any part of the Product is, or in
Our opinion is likely to become, the subject of a
claim of infringement, We may at Our sole discretion:
(i) procure for You the right to use the Product or
the affected part thereof; (ii) replace the Product
or affected part with other software that has the
same or additional functionality; (iii) modify the

Product or affected part to make it non-infringing;
or (iv) if none of the foregoing remedies is
commercially feasible as determined by Us in Our sole
discretion, terminate your license to the Product and
upon return of the Product, refund a pro-rated (over
a 12 month period on a straight-line basis) portion of
the payments paid by You to Us over the preceding 12
months for the Product or the affected part.

7.3   We shall have no liability or other obligations
to the extent a claim is based on: (i) failure to use
an Update provided by Us, if infringement could have
been avoided by use of the latest version of the
Products; (ii) combination, operation, or use of
Products with other products not provided by Us, if
such infringement would have been avoided in the
absence of such combination, operation, or use;
(iii) Your use of Product in any manner inconsistent
with the applicable license terms and conditions;
(iv) modification, alteration, or enhancement to the
Product not performed or expressly authorized by Us;
(v) the furnishing to You of any information, service
or technical support by a third party;
(vi) non-licensed use of the Products; or
(vii) Our compliance with Your designs, specifications
or instructions.

THE FOREGOING PROVISIONS OF THIS SECTION STATE THE
ENTIRE LIABILITY AND OBLIGATION OF US AND YOUR
EXCLUSIVE REMEDY FOR CLAIMS OF INFRINGEMENT OF THIRD
PARTY RIGHTS.

8.   TERM AND TERMINATION.

8.1   Unless sooner terminated as provided below, the
term of this Agreement shall begin on the Effective
Date and continue for one year and then automatically
renew for successive one-year terms, unless either
party notifies the other party in writing of its
intent not to renew at least ninety days prior to
the expiration of the initial or then-current
renewal term. If the Agreement term is not renewed,
it shall be deemed to expire upon the earlier of
(i) one year from the end of the then-current term
or (ii) the end of the last remaining Subscription
Term. If a Product is obtained under a perpetual
license, the Agreement shall be deemed not to expire
for purposes of that Product only.

8.2   Notwithstanding the foregoing, either party may

terminate this Agreement or an Order (i) by written
notice of breach of the Agreement or such Order,
provided the other party fails to cure such breach
within thirty days after such notice, or
(ii) forthwith if the other party makes an assignment
for the benefit of creditors or proceedings are
commenced by or for such other party under any
bankruptcy, insolvency, or debtor's relief law.
Upon termination or expiration for any reason, all
rights (including all license rights) and obligations
shall terminate except as provided in this Section
8.2 (and Section 8.1 in the case of expiration only),
and such termination or expiration shall not relieve
You from Your obligation to pay fees that remain
unpaid and shall not limit either party from pursuing
other available remedies.  Upon termination or
expiration of this Agreement or any part thereof, We
shall have no obligation to refund to You any fees
paid by You.  If an Order is terminated or expired,
You must certify in writing to Us that You have
immediately un-installed and destroyed or returned
all copies of the Product within thirty (30) days of
such termination/expiration. The following Sections
survive termination or expiration of this Agreement:
1, 2.1(i) and (ii), 2.2(iv), 4, 5.4, 6, 8, and 9.

9.    GENERAL.

9.1   Confidential Information.  Each party receiving
Confidential Information ("Recipient") shall retain
in confidence and require its employees, agents, and
contractors to retain in confidence all Confidential
Information of the other party ("Discloser").
"Confidential Information" means (i) for Us: the terms
and conditions of this Agreement, all financial terms
and conditions contained in Our quotation, and the
Products as well as results of any Product benchmark
or similar tests (whether performed by Us, You, or
any third party); and (ii) for either party: any
information, in written or other tangible form,
which has been conspicuously marked by Discloser as
"confidential" or "proprietary" or if not so marked,
if it should reasonably be regarded as confidential
due to the nature of the information being disclosed.
Recipient shall protect Discloser's Confidential
Information in the same manner Recipient protects
its own Confidential Information of similar
importance, but in no event with less than reasonable
care. Confidential Information shall remain the sole
property of the Discloser and shall not be disclosed

to any third party (except, solely to employees, attorneys, consultants, and subsidiaries, who need to know and are bound by a written agreement with Recipient to maintain the confidentiality of such Confidential Information in a manner consistent with this Agreement) or used except as permitted under this Agreement.  Confidential Information shall not include any information that: (i) is or becomes publicly known without the Recipient's breach of any obligations owed to the Discloser; (ii) is rightfully disclosed to the Recipient from a source other than the Discloser without a breach of an obligation of confidentiality; or (iii) is independently developed by the Recipient without any access to the Discloser's Confidential Information. Notwithstanding the foregoing, We may disclose that You are Our customer.  In addition, either party may disclose information in compliance with applicable law or a court order, provided the Discloser is given reasonably prompt notice thereof and the Recipient provides cooperation and assistance in any attempt to prevent or limit such disclosure. The obligations set forth herein with respect to Confidential Information shall continue in full force and effect for a period of three (3) years after the date of termination of this Agreement.

9.2   Relationship of the Parties.  This Agreement is not intended to and shall not create a relationship such as a partnership, franchise, joint venture, fiduciary, agency or employment relationship. Neither party may act in a manner that expresses or implies a relationship other than that of independent contractor, nor bind the other party.

9.3   Governing Law and Venue.  Any action related to this Agreement shall be governed by California law and controlling U.S. federal law, and the choice of law rules of any jurisdiction shall not apply.  The parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.  The venue for any claims arising under this Agreement shall be the federal courts located in the Northern District of California or the state courts located in Santa Clara County, California, and the parties agree to submit to the exclusive jurisdiction of such courts.

9.4   Assignment.  Neither this Agreement nor any

right, obligation, or Product licensed hereunder
may be assigned by You without Our prior written
consent. Any purported assignment in violation of
the foregoing is void.  Subject to the foregoing,
the provisions of this Agreement shall be binding
upon and inure to the benefit of the parties, and
their permitted successors and assigns.

9.5   Severability.  If any provision of this
Agreement is declared unlawful, void, or
unenforceable, then that provision shall be
limited to the extent enforceable, or otherwise
severed, and will not affect the validity and
enforceability of the remaining provisions.

9.6   Audits.  During the term of this Agreement
and continuing until two years after termination
or expiration, You shall keep and retain complete
and accurate records regarding Your use of the
Products.

i) Self-Audits.  To help manage Your use of the
Products and Your compliance with this Agreement,
You agree to perform a self-audit upon 10 working
days prior written notice from Us, on the self-
audit form made available by Us. If Your self-audit
form reveals a discrepancy that You have
previously or are currently using more of Our
products than You have valid Orders or licenses for,
You must pay Us the unpaid amounts at the same time
as returning the self-audit form to Us. In the
event that You are late in submitting a self-audit
form We may delay accepting orders and/or suspend
Support Services until We receive the self-audit
form and We may instigate the Formal Audit process
defined below.

ii) Formal Audits.  We, or Our designated agent,
may, upon five (5) working days prior written
notice to You, inspect any of Your facilities
where Products are used and audit records for the
purpose of confirming Your use of the Products and
Your compliance with this Agreement. We may perform
only one formal audit per twelve (12) month period
unless a previous audit reveals a discrepancy.  Our
audit shall be performed at Our sole expense;
provided however, that if, as a result of Our audit,
it is determined that You have underpaid Us by more
than 5% of the amount owed during the period audited,
then You shall bear the reasonable cost of Our audit.

In the event of any underpayment, You shall pay all past-due fees immediately in accordance with the terms of this Agreement. This section survives termination of this Agreement for two (2) years.

9.7   Force Majeure.  Except with respect to the obligation to pay fees when due hereunder, neither party shall be deemed in default of this Agreement because of a delay or failure in performance of its obligation resulting from any cause beyond its reasonable control (a "Force Majeure"), provided it gives reasonably prompt notice of the Force Majeure condition to the other party and uses reasonable efforts to mitigate the delay or failure.

9.8   Notices.  Any notices required or permitted to be given hereunder shall be delivered by personal delivery, express courier, or recorded delivery, postage prepaid, return receipt requested, to a party's address set forth in an Order, or if to You to Your headquarters or to Us to: Actian Corporation, Attn: Legal Department, 500 Arguello Street, Suite 200, Redwood City, CA 94063.  A notice shall be deemed effective when actually delivered. Either party may change its address for purposes of this Agreement by written notice given in accordance herewith.

9.9   Marketing.  Except if required to do so by the Securities Exchange Commission, regulatory authority or similar body, neither party shall provide copies of this Agreement or otherwise disclose its terms to any third party, without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed.  The parties agree that within thirty (30) days of the Effective Date We may issue a press announcement describing the relationship of the parties.  You agree to allow Us to reference and identify You, and use Your logo in Our advertising, sales promotion, press releases, public filings, website usage, and other publicity matters relating to the Products furnished and/or the related Support Services performed pursuant to this Agreement, so long as such use is without any modification of Your name, mark, or logo.

You agree to act as a "Reference Account" for Us.  In such cases where You have agreed to serve as a "Reference Account," We shall be allowed to refer other customers, potential customers, press, analysts, etc., to Your executives, who are familiar with Your

relationship with Us, to act as a reference for Us.

9.10  U.S. Government End Users.  The software is "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212.  Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software with only those rights set forth under this Agreement.  Any technical data provided that is not covered by the above provisions shall be deemed "technical data-commercial items" pursuant to 48 C.F.R. 252.227.7015(a).  Any use, modification, reproduction, release, performance, display or disclosure of such technical data shall be governed by the terms of 48 C.F.R. 252.227.7015(b).

9.11 High Risk Activities.  The Products are not fault-tolerant and not designed, manufactured or intended for use or resale as on-line control equipment in hazardous environments requiring fail-safe performance, such as in the operation of nuclear facilities, aircraft navigation or communication systems, air traffic control, direct life support machines, or weapons systems, in which the failure of the Product could lead directly to death, personal injury, or severe physical or environmental damage ("High Risk Activities"). We and Our suppliers specifically disclaim any express or implied warranty of fitness for High Risk Activities.

9.12 Third Party Rights.  Notwithstanding any other provision in this Agreement, nothing in this Agreement shall create or confer any rights or other benefits in favour of any person not a party hereto, except with respect to Microsoft software included in the Products. Microsoft is a third party beneficiary with the right to enforce its right in its software.

9.13 Injunctive Relief.  You acknowledge that the Products contain Our and Our licensees' valuable trade secrets and proprietary information and that any actual or threatened disclosure or unauthorized use or distribution of the Products or Our or Our licensees' Confidential Information will constitute immediate and irreparable harm to Us for which monetary damages would be an inadequate remedy and entitle Us to immediate injunctive relief without the need to post a bond or show actual monetary damages.

9.14 Integration and Amendment.  This Agreement
constitutes the entire agreement between the
parties and supersedes all prior or contemporaneous
conditions, agreements, communications or
representations, whether oral or written, relating
to the subject matter hereof.  Neither party has
relied on any statement or representation by an
employee or agent of the other party in entering
into this Agreement.  Any additional or different
terms in Your documents (including any terms
contained on Purchase Orders) shall not apply and are
hereby deemed to be material alterations and notice of
objection to, and rejection of them is hereby given.
Except as permitted herein, this Agreement may not be
modified or any term or condition waived except in
writing signed by a duly authorized representative
of each party.  No waiver of any breach of any
provision of this Agreement shall constitute a
waiver of any prior, concurrent or subsequent breach
of the same or any other provision hereof.  Headings
are for convenience only and shall not affect the
interpretation of any provision hereunder.

YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD THIS
AGREEMENT AND HEREBY AGREE TO BE BOUND BY THE TERMS AND
CONDITIONS OF THIS AGREEMENT BY CLICKING ON THE
"ACCEPT" BUTTON BELOW (OR TYPING "Y" OR "YES" IF YOU
ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE).

# EXHIBIT B

ACTIAN CORPORATION
CUSTOMER LICENSE AND SUPPORT SERVICES AGREEMENT

PLEASE READ THIS AGREEMENT CAREFULLY BEFORE DOWNLOADING
OR INSTALLING THE SOFTWARE.

This Customer License and Support Services Agreement
("Agreement") is a legal agreement between the end user
downloading or installing the software ("you") and
Actian Corporation, with its principal place of business
located at 2300 Geng Road, Suite 150, Palo Alto,
CA 94303 ("Us," "Our," or "We").  IF YOU ARE ENTERING
INTO THIS AGREEMENT ON BEHALF OF A COMPANY OR AN
ENTITY, YOU REPRESENT THAT YOU ARE THE EMPLOYEE OR
AGENT OF SUCH COMPANY OR ENTITY AND YOU HAVE THE
AUTHORITY TO ENTER INTO THIS AGREEMENT AND LEGALLY
BIND YOUR COMPANY OR ENTITY. For purposes of this
Agreement, "You" or "Your" includes you and any of
your companies or entities that you have bound under
this Agreement. BY DOWNLOADING, INSTALLING OR USING
THE SOFTWARE OR BY CLICKING THE "I ACCEPT" BUTTON BELOW
(OR TYPING "Y" OR "YES" IF YOU ARE INSTEAD ASKED FOR A
"Y OR N" RESPONSE), YOU ARE AGREEING TO BE BOUND BY
THIS AGREEMENT.  IF YOU DO NOT ACCEPT THE TERMS OF THIS
AGREEMENT, THEN YOU MUST CLICK ON THE "DECLINE" OR
"I DO NOT ACCEPT" BUTTON BELOW (OR TYPE "N" OR "NO" IF
YOU ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE) AND YOU
MAY NOT DOWNLOAD, INSTALL OR USE THE SOFTWARE.  This
Agreement governs the purchase and use of the software
and services described in an Order (defined below). The
"Effective Date" shall be deemed the date you click on
the "Accept" button below.

1.    DEFINITIONS.

1.1   "Documentation" means the user documentation
supplied by Us with the Product.

1.2   "Customer Subsidiaries" means those
companies which are Your wholly-owned subsidiary
on the Effective Date of this Agreement.
Wholly-owned subsidiary shall be defined as an entity
in which You own a 100% shareholding.

1.3   "Order" means a document typically titled
"Order Confirmation" or "Software and Support Services Order," executed by the parties,
that refers to this Agreement and describes in greater
detail Your order-specific information and use
restrictions including, but not limited to: Your billing

information, lists of Products and Support Services ordered, permitted number of cores with which the Products can be used, and pricing. Such Order(s) is (are) hereby incorporated into this Agreement by reference.

1.4    "Outsourcer" means a third party engaged by You for internal data processing, consulting, product customization, or internal information management.

1.5    "Products" means the machine-readable object code of the software programs specified in an Order, together with any Documentation and Updates thereto.

1.6    "Subscription Term" means one year from the date of the applicable Order or as otherwise specified in the Order or an addendum to this Agreement.

1.7    "Support Services" means Product support services.

1.8    "Updates" means any update, release, or enhancement that is provided to You at Our discretion under Support Services.

1.9    "Warranty Period" means thirty (30) days from the date of initial delivery to You of the applicable Product (excluding Updates).

2.    LICENSE.

2.1    License Grant.  Provided that You comply with the terms and conditions of this Agreement, including, but not limited to the conditions stated in Sections 2.2(i) – 2.2(iv), We grant You a limited, non-exclusive, non-sublicensable and non-transferable license to use the Products for Your business purposes during the Subscription Term in accordance with the terms and conditions of this Agreement with any restrictions stated in an Order or attachment hereto, such as the number of copies of the Products made or used by You, installed on Your workstations or servers, or on the number of Your users or the number of seats, sockets or cores accessing or using the Product. For the avoidance of doubt, You have no right or license under this Agreement to any use, copy, instance or version of a Product or other software program, or support services for a particular Product, unless such use, copy, instance or version and such support services are covered in a then-current Order or attachment thereto. You must ensure that any limits on the number of cores/CPUs are not exceeded by platform virtualization or other means. Customer Subsidiaries may place Order(s) under this Agreement, provided that such

Order(s) reference this Agreement, and shall have the benefit of the Support Services as may be described in such Order(s), provided that:

i)  You will ensure that each of such Customer Subsidiaries is aware of and complies with the terms of this Agreement as though such Customer Subsidiaries were You, and You are liable and responsible for their acts and omissions; and

ii)  You will indemnify Us and keep Us fully and effectively indemnified against all costs, claims, demands, expenses and liabilities of whatsoever nature which We may sustain as a result of a failure by any Customer Subsidiaries to comply with the terms of this Agreement.

2.2   Product Use Rights.  The license granted in Section 2.1, above, is subject to the following conditions:

i) License Restrictions.  Except as expressly permitted by this Agreement, You may not:
(i) distribute, lease, loan, sell, encumber, sublicense, or otherwise transfer a Product;
(ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products;
(iv) use a Product to develop a product which is competitive with any of the software programs manufactured and/or marketed by Us; (v) use a Product in the same production environment in which You deploy an open source version of the Product; vi) use the Products beyond the scope or term of any license; or (vii) use the Product to process data for third parties (e.g., data performing data migrations, conversions, or transformations for Your customers).  Actian Vector (formerly Vectorwise) cannot be used as a transactional database. You shall notify Us if You become aware of any unauthorized third party access to, or use of, a Product.

ii) Outsourcers.  You may permit access to, and use
of, the Products by an Outsourcer, provided that:
(i) the Outsourcer agrees to comply with the terms
of this Agreement and to access and use the Products
solely for purposes of rendering services to You; and
(ii) the total number of licenses used by You and
Outsourcer must not exceed the scope or number of licenses
purchased.  You shall be responsible and liable for
Outsourcer's compliance with the terms of this
Agreement.  Upon completion of Your services by
Outsourcer, You shall, upon Our request, certify in
writing that Outsourcer has un-installed and destroyed
all copies of Products within thirty (30) days of such
completion of services, and You will give Us any
reasonable assistance We may request to ensure
Outsourcer complies with this clause.

iii) Duplication of Product.  You may make Product
copies equal to the number of licensed copies
expressly authorized under this Agreement plus a
reasonable number of archival copies for inactive
backup purposes, provided that all Product copyright,
trademark, patent, and related proprietary notices
incorporated in or affixed to the Product shall be
duplicated by You on all copies or extracts thereof
and shall not be altered, removed, or obliterated.
Except as required to be permitted by applicable law,
reverse compiling (including reverse compiling to
ensure interoperability), reverse engineering and
other source code derivation of the Product is
prohibited. If You wish to exercise any right to
reverse engineer to ensure interoperability in
accordance with applicable law, You shall first
provide written notice to Us and permit Us, at Our
discretion, to make an offer to provide information
and assistance reasonably required to ensure Product
interoperability with Your other products for a fee
to be mutually agreed upon (if any).

iv) Product Ownership and Restrictions.  The copies
of Products provided hereunder are licensed, not sold,
and all intellectual property rights and title to the
Products shall remain with Us and Our suppliers
and no interest or ownership therein is conveyed to
You.  No right to create a copyrightable work, whether
joint or unitary, is granted or implied; this includes
works that modify (even for purposes of error
correction), adapt, or translate the Product or create
derivative works, compilations, or collective works
therefrom, except as necessary to configure the Product

using the menus, options and tools provided for such
purposes and contained in the Product. You shall not
attempt to circumvent any user limits or other license,
timing or use restrictions that are built in to the
Products. Certain items of software code provided along
with the Products are subject to "open source" licenses
("Third Party Code") provided with the Products.  The
Third Party Code is not subject to the terms and conditions
of this Agreement, except for Sections 5 and 6 of this
Agreement.  Nothing in this Agreement limits Customer's
rights under, or grants Customer rights that supersede
the terms and conditions of any applicable license for
the Third Party Code, including any rights to copy, modify
or distribute Third Party Code under the applicable license.
You are hereby notified that the Products may contain
time-out devices, counter devices, and/or other devices
intended to ensure the limits of a particular license will
not be exceeded ("Limiting Devices").  If the Products do
contain Limiting Devices, We shall ensure that You receive
any keys or other materials necessary to use the Products
to the limits of Your license.

2.3   Product Export. Any person or entity exporting
or re-exporting Products or services directly or
indirectly and via any means, including electronic
transfer, is wholly responsible for doing so in
accordance with the U.S. Export Administration
Regulations and the laws of host countries and You
agree to comply strictly with all such laws and
regulations. We assume no responsibility or liability
for Your failure to obtain any necessary export
approvals. Specifically, no Product or services may be
exported to embargoed or otherwise restricted countries
or end-users.  This provision shall survive the
expiration or earlier termination of this Agreement.

3.    SUPPORT AND ADDITIONAL SERVICES.

3.1   Support Services. The details of the Support
Services can be found at
http://supportservices.actian.com/support-services/support#policy.
We may suspend or terminate Support Services for all
Product(s) in the event that You do not pay fees
for Support Services when due.  If You purchase
Support Services for a Product, then You shall
purchase Support Services for all licenses and
copies of such Product. You may not use or access
support services (i) for a software product not covered
in a then-current Order, or (ii) for a Product not
covered by a then-current paid Actian support plan.

You may not use or access support services for the
benefit of a third party, or provide access to or
permit use of support services by a third party.

3.2   Additional Services.  Consulting services or
training may be obtained by You on an as-available
basis and at mutually agreed rates in accordance
with a separate agreement.  Should We agree to
provide consulting services, the payment of the
Product license and Support Services fees under this
Agreement shall not be contingent under any
circumstances upon the performance of any such
services including installation and implementation
services.

4.    FEES; TAXES; PAYMENT TERMS; PURCHASE ORDERS;
SHIPPING.

4.1   Fees.  Fees or other charges shall be as
specified in an Order. All amounts payable under
this Agreement shall be payable in advance, and shall
be non-refundable and not subject to set off or
deduction by You. In the event that You wish to renew
the subscription of a Product, the applicable price
shall be that stated within the then-current Actian
price list, unless otherwise agreed between the
parties.

4.2   Taxes.  Our fees are exclusive of, and You are
responsible for, duties and taxes (other than taxes on
Our income).

4.3   Invoicing and Payment.  All payments of fees and
charges under this Agreement shall be made in U.S.
dollars within thirty (30) days of the date of the
applicable invoice sent to You by Us.  Any amount
payable by You to Us hereunder which is past due may
be subject to a late payment charge equal to one
and a half percent (1.5%) per month, or the highest rate permitted
by law, whichever is less.  The receipt or request for
payment of such amounts shall not prejudice Our rights
with respect to Your failure to pay on the due date.

4.4   Orders and Shipping.  We have no obligation to
accept Purchase Orders, including without limitation
Purchase Orders for renewal of Support Services.
Any fulfillment of Purchase Orders shall be solely
in accordance with the terms of this Agreement and
We expressly reject any conflicting terms and
conditions in Your Purchase Order. Products and

Documentation are shipped FOB origin, Our site.
Delivery will be by electronic or physical means,
at Our election, and all Products shall be deemed
accepted by You immediately upon the earlier of
download or receipt from Us.

5.    LIMITED WARRANTIES.

5.1    We warrant that, during the Warranty Period,
the Products (excluding Updates) will operate
substantially in conformity with the applicable
Documentation. Updates are not included within the
definition of Products for the purposes of any
Warranty or Warranty Period.

5.2    Within the Warranty Period, if You detect a
defect in a Product's physical media, You may return
the defective media to Us and We will replace it
free of charge.

5.3    Provided that We are notified in writing of a
Product's non-conformance with the warranty set forth
in section 5.1 within the applicable Warranty Period,
We shall, at Our option: a) repair or replace the
defective Product, or b) refund the license fees paid
for the Product in exchange for a return of the
defective Product. In the event of a refund Your
license to use the Product will immediately expire.
This Section 5.3 is Your exclusive remedy for breach
of the limited warranty in Section 5.1.  The above
warranties specifically exclude defects resulting
from accident, abuse, misapplication or unauthorized
repair, modifications, enhancements and installation
in an incompatible environment.  We do not warrant
that use of the Products will be uninterrupted or
error free.

5.4    EXCEPT FOR EXPRESS WARRANTIES STATED IN THIS
SECTION 5 AND TO THE MAXIMUM EXTENT PERMITTED BY LAW,
THE PRODUCTS AND SERVICES ARE PROVIDED "AS IS," AND
WE, AND OUR SUPPLIERS DISCLAIM ALL OTHER WARRANTIES
AND CONDITIONS, WHETHER EXPRESS OR IMPLIED OR
STATUTORY, INCLUDING WITHOUT LIMITATION, ANY IMPLIED
WARRANTY (I) OF MERCHANTABILITY OR SUITABILITY,
(II) OF FITNESS FOR A PARTICULAR PURPOSE, OR
(III) OF NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

6.    LIMITATION OF LIABILITY.

To the maximum extent permitted by applicable law, in

no event will We or Our Suppliers be liable to You or
any third party for any indirect, special, incidental,
consequential or punitive damages arising out of or
related to this Agreement, including without
limitation, any lost profits or revenues, loss or
inaccuracy of any data, or cost of substitute goods,
regardless of the theory of liability (including
negligence) and even if We have been advised of the
possibility of such damages. We and Our suppliers'
aggregate liability to You or any third party for
any cause whatsoever shall not exceed the total
fees paid by You to Us under this Agreement during
the 12 months preceding the date that the claim arose.
In no event shall You raise any claim under this
Agreement more than 2 years after (i) the discovery
of the circumstances giving rise to such claim; or
(ii) the effective date of the termination of this
Agreement. The limitations in this Section shall apply
even if any remedy fails of its essential purpose.
Nothing in this Agreement shall exclude or limit
either party's liability for death or personal injury
caused by that party's negligent act or omission or by
wilful default.

7.    THIRD PARTY CLAIMS.

7.1   We shall: (i) defend, or at Our option settle,
any legal proceeding brought against You to the extent
that it is based on a claim that a Product infringes a
third-party patent, trademark or copyright of the
country in which You take delivery of the
Product; and (ii) pay all damages and costs
finally awarded against You by a court of competent
jurisdiction to the extent attributable to such a
claim or agreed to by way of a settlement entered
into by Us, provided that: You (i) notify Us promptly
of each such claim; (ii) give Us sole control of the
defense and/or settlement of the claim; (iii) fully
cooperate with Us in the defense or settlement of the
claim; (iv) mitigate such damages and costs as far as
is reasonably possible; and (v) take no action that
may prejudice Our ability to defend the claim.

7.2   If all or any part of the Product is, or in
Our opinion is likely to become, the subject of a
claim of infringement, We may at Our sole discretion:
(i) procure for You the right to use the Product or
the affected part thereof; (ii) replace the Product
or affected part with other software that has the
same or additional functionality; (iii) modify the

Product or affected part to make it non-infringing;
or (iv) if none of the foregoing remedies is
commercially feasible as determined by Us in Our sole
discretion, terminate your license to the Product and
upon return of the Product, refund a pro-rated (over
a 12 month period on a straight-line basis) portion of
the payments paid by You to Us over the preceding 12
months for the Product or the affected part.

7.3   We shall have no liability or other obligations
to the extent a claim is based on: (i) failure to use
an Update provided by Us, if infringement could have
been avoided by use of the latest version of the
Products; (ii) combination, operation, or use of
Products with other products not provided by Us, if
such infringement would have been avoided in the
absence of such combination, operation, or use;
(iii) Your use of Product in any manner inconsistent
with the applicable license terms and conditions;
(iv) modification, alteration, or enhancement to the
Product not performed or expressly authorized by Us;
(v) the furnishing to You of any information, service
or technical support by a third party;
(vi) non-licensed use of the Products; or
(vii) Our compliance with Your designs, specifications
or instructions.

THE FOREGOING PROVISIONS OF THIS SECTION STATE THE
ENTIRE LIABILITY AND OBLIGATION OF US AND YOUR
EXCLUSIVE REMEDY FOR CLAIMS OF INFRINGEMENT OF THIRD
PARTY RIGHTS.

8.    TERM AND TERMINATION.

8.1   Unless sooner terminated as provided below, the
term of this Agreement shall begin on the Effective
Date and continue for one year and then automatically
renew for successive one-year terms, unless either
party notifies the other party in writing of its
intent not to renew at least ninety days prior to
the expiration of the initial or then-current
renewal term. If the Agreement term is not renewed,
it shall be deemed to expire upon the earlier of
(i) one year from the end of the then-current term
or (ii) the end of the last remaining Subscription
Term. If a Product is obtained under a perpetual
license, the Agreement shall be deemed not to expire
for purposes of that Product only.

8.2   Notwithstanding the foregoing, either party may

terminate this Agreement or an Order (i) by written
notice of breach of the Agreement or such Order,
provided the other party fails to cure such breach
within thirty days after such notice, or
(ii) forthwith if the other party makes an assignment
for the benefit of creditors or proceedings are
commenced by or for such other party under any
bankruptcy, insolvency, or debtor's relief law.
Upon termination or expiration for any reason, all
rights (including all license rights) and obligations
shall terminate except as provided in this Section
8.2 (and Section 8.1 in the case of expiration only),
and such termination or expiration shall not relieve
You from Your obligation to pay fees that remain
unpaid and shall not limit either party from pursuing
other available remedies.  Upon termination or
expiration of this Agreement or any part thereof, We
shall have no obligation to refund to You any fees
paid by You.  If an Order is terminated or expired,
You must certify in writing to Us that You have
immediately un-installed and destroyed or returned
all copies of the Product within thirty (30) days of
such termination/expiration. The following Sections
survive termination or expiration of this Agreement:
1, 2.1(i) and (ii), 2.2(iv), 4, 5.4, 6, 8, and 9.

9.    GENERAL.

9.1   Confidential Information.  Each party receiving
Confidential Information ("Recipient") shall retain
in confidence and require its employees, agents, and
contractors to retain in confidence all Confidential
Information of the other party ("Discloser").
"Confidential Information" means (i) for Us: the terms
and conditions of this Agreement, all financial terms
and conditions contained in Our quotation, and the
Products as well as results of any Product benchmark
or similar tests (whether performed by Us, You, or
any third party); and (ii) for either party: any
information, in written or other tangible form,
which has been conspicuously marked by Discloser as
"confidential" or "proprietary" or if not so marked,
if it should reasonably be regarded as confidential
due to the nature of the information being disclosed.
Recipient shall protect Discloser's Confidential
Information in the same manner Recipient protects
its own Confidential Information of similar
importance, but in no event with less than reasonable
care. Confidential Information shall remain the sole
property of the Discloser and shall not be disclosed

to any third party (except, solely to employees,
attorneys, consultants, and subsidiaries, who need to
know and are bound by a written agreement with
Recipient to maintain the confidentiality of such
Confidential Information in a manner consistent with
this Agreement) or used except as permitted under
this Agreement.  Confidential Information shall not
include any information that: (i) is or becomes
publicly known without the Recipient's breach of
any obligations owed to the Discloser; (ii) is
rightfully disclosed to the Recipient from a source
other than the Discloser without a breach of an
obligation of confidentiality; or (iii) is
independently developed by the Recipient without
any access to the Discloser's Confidential
Information. Notwithstanding the foregoing, We may
disclose that You are Our customer.  In addition,
either party may disclose information in compliance
with applicable law or a court order, provided the
Discloser is given reasonably prompt notice thereof
and the Recipient provides cooperation and
assistance in any attempt to prevent or limit such
disclosure. The obligations set forth herein with
respect to Confidential Information shall continue
in full force and effect for a period of three (3)
years after the date of termination of this
Agreement.

9.2   Relationship of the Parties.  This Agreement
is not intended to and shall not create a relationship
such as a partnership, franchise, joint venture,
fiduciary, agency or employment relationship. Neither
party may act in a manner that expresses or implies a
relationship other than that of independent contractor,
nor bind the other party.

9.3   Governing Law and Venue.  Any action related to
this Agreement shall be governed by California law and
controlling U.S. federal law, and the choice of law
rules of any jurisdiction shall not apply.  The
parties agree that the United Nations Convention on
Contracts for the International Sale of Goods shall
not apply to this Agreement.  The venue for any claims
arising under this Agreement shall be the federal
courts located in the Northern District of California
or the state courts located in Santa Clara County,
California, and the parties agree to submit to the
exclusive jurisdiction of such courts.

9.4   Assignment.  Neither this Agreement nor any

right, obligation, or Product licensed hereunder
may be assigned by You without Our prior written
consent. Any purported assignment in violation of
the foregoing is void.  Subject to the foregoing,
the provisions of this Agreement shall be binding
upon and inure to the benefit of the parties, and
their permitted successors and assigns.

9.5   Severability.  If any provision of this
Agreement is declared unlawful, void, or
unenforceable, then that provision shall be
limited to the extent enforceable, or otherwise
severed, and will not affect the validity and
enforceability of the remaining provisions.

9.6   Audits.  During the term of this Agreement
and continuing until two years after termination
or expiration, You shall keep and retain complete
and accurate records regarding Your use of the
Products.

i) Self-Audits.  To help manage Your use of the
Products and Your compliance with this Agreement,
You agree to perform a self-audit upon 10 working
days prior written notice from Us, on the self-
audit form made available by Us. If Your self-audit
form reveals a discrepancy that You have
previously or are currently using more of Our
products than You have valid Orders or licenses for,
You must pay Us the unpaid amounts at the same time
as returning the self-audit form to Us. In the
event that You are late in submitting a self-audit
form We may delay accepting orders and/or suspend
Support Services until We receive the self-audit
form and We may instigate the Formal Audit process
defined below.

ii) Formal Audits.  We, or Our designated agent,
may, upon five (5) working days prior written
notice to You, inspect any of Your facilities
where Products are used and audit records for the
purpose of confirming Your use of the Products and
Your compliance with this Agreement. We may perform
only one formal audit per twelve (12) month period
unless a previous audit reveals a discrepancy.  Our
audit shall be performed at Our sole expense;
provided however, that if, as a result of Our audit,
it is determined that You have underpaid Us by more
than 5% of the amount owed during the period audited,
then You shall bear the reasonable cost of Our audit.

In the event of any underpayment, You shall pay all past-due fees immediately in accordance with the terms of this Agreement. This section survives termination of this Agreement for two (2) years.

9.7   Force Majeure.  Except with respect to the obligation to pay fees when due hereunder, neither party shall be deemed in default of this Agreement because of a delay or failure in performance of its obligation resulting from any cause beyond its reasonable control (a "Force Majeure"), provided it gives reasonably prompt notice of the Force Majeure condition to the other party and uses reasonable efforts to mitigate the delay or failure.

9.8   Notices.  Any notices required or permitted to be given hereunder shall be delivered by personal delivery, express courier, or recorded delivery, postage prepaid, return receipt requested, to a party's address set forth in an Order, or if to You to Your headquarters or to Us to: Actian Corporation, Attn: Legal Department, 500 Arguello Street, Suite 200, Redwood City, CA 94063.  A notice shall be deemed effective when actually delivered. Either party may change its address for purposes of this Agreement by written notice given in accordance herewith.

9.9   Marketing.  Except if required to do so by the Securities Exchange Commission, regulatory authority or similar body, neither party shall provide copies of this Agreement or otherwise disclose its terms to any third party, without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed.  The parties agree that within thirty (30) days of the Effective Date We may issue a press announcement describing the relationship of the parties.  You agree to allow Us to reference and identify You, and use Your logo in Our advertising, sales promotion, press releases, public filings, website usage, and other publicity matters relating to the Products furnished and/or the related Support Services performed pursuant to this Agreement, so long as such use is without any modification of Your name, mark, or logo.

You agree to act as a "Reference Account" for Us.  In such cases where You have agreed to serve as a "Reference Account," We shall be allowed to refer other customers, potential customers, press, analysts, etc., to Your executives, who are familiar with Your

relationship with Us, to act as a reference for Us.

9.10  U.S. Government End Users.  The software is
"commercial items" as that term is defined at 48 C.F.R.
2.101, consisting of "commercial computer software"
and "commercial computer software documentation" as
such terms are used in 48 C.F.R. 12.212.  Consistent
with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through
227.7202-4, all U.S. Government end users acquire the
software with only those rights set forth under this
Agreement.  Any technical data provided that is not
covered by the above provisions shall be deemed
"technical data-commercial items" pursuant to 48 C.F.R.
252.227.7015(a).  Any use, modification, reproduction,
release, performance, display or disclosure of such
technical data shall be governed by the terms of 48
C.F.R. 252.227.7015(b).

9.11 High Risk Activities.  The Products are not
fault-tolerant and not designed, manufactured or
intended for use or resale as on-line control equipment
in hazardous environments requiring fail-safe
performance, such as in the operation of nuclear
facilities, aircraft navigation or communication
systems, air traffic control, direct life support machines,
or weapons systems, in which the failure of the Product
could lead directly to death, personal injury, or severe
physical or environmental damage ("High Risk Activities").
We and Our suppliers specifically disclaim any express or
implied warranty of fitness for High Risk Activities.

9.12 Third Party Rights.  Notwithstanding any other
provision in this Agreement, nothing in this
Agreement shall create or confer any rights or other
benefits in favour of any person not a party hereto,
except with respect to Microsoft software included in
the Products. Microsoft is a third party beneficiary
with the right to enforce its right in its software.

9.13 Injunctive Relief.  You acknowledge that the
Products contain Our and Our licensees' valuable
trade secrets and proprietary information and that
any actual or threatened disclosure or unauthorized
use or distribution of the Products or Our or Our
licensees' Confidential Information will constitute
immediate and irreparable harm to Us for which
monetary damages would be an inadequate remedy and
entitle Us to immediate injunctive relief without
the need to post a bond or show actual monetary
damages.

9.14 Integration and Amendment.  This Agreement
constitutes the entire agreement between the
parties and supersedes all prior or contemporaneous
conditions, agreements, communications or
representations, whether oral or written, relating
to the subject matter hereof.  Neither party has
relied on any statement or representation by an
employee or agent of the other party in entering
into this Agreement.  Any additional or different
terms in Your documents (including any terms
contained on Purchase Orders) shall not apply and are
hereby deemed to be material alterations and notice of
objection to, and rejection of them is hereby given.
Except as permitted herein, this Agreement may not be
modified or any term or condition waived except in
writing signed by a duly authorized representative
of each party.  No waiver of any breach of any
provision of this Agreement shall constitute a
waiver of any prior, concurrent or subsequent breach
of the same or any other provision hereof.  Headings
are for convenience only and shall not affect the
interpretation of any provision hereunder.

YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD THIS
AGREEMENT AND HEREBY AGREE TO BE BOUND BY THE TERMS AND
CONDITIONS OF THIS AGREEMENT BY CLICKING ON THE
"ACCEPT" BUTTON BELOW (OR TYPING "Y" OR "YES" IF YOU
ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE).

EXHIBIT C

DocuSign Envelope ID: 868C998E-AC38-49BA-BD36-7A70A470FADB



# Order Confirmation

**Prepared by:** Phil Hagemeier
phil.hagemeier@actian.com

**Actian Corporation**
2300 Geng Road Suite 150
**Palo Alto, CA 94303**
**United States**
**Phone: (650) 587-5500**
**Fax: (650) 649-2358**

**Order Number:** 727274
**Order Date:** 20-Jun-2018
**Account Number:** 1111298
**Billing Terms:** Annual in Advance
**Payment Terms:** Net 30
**Validity Period:** June 29th, 2018

**BILL TO:**
SHA, LLC dba FirstCare Health Plans
Accounts Payable
12940 N Highway 183
Austin, Texas 78750-3203
United States

**SHIP TO:**
SHA, LLC dba FirstCare Health Plans
Paula Guerrero
12940 N Highway 183
Austin, TX 78750-3203
United States

| Product | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Contract Start** | **Contract End** | **Version** | **Platform** | **Unit** | **Quantity** | **Price** | **Extended Price** |
| **DC-11-FLX-3-B-ENG-P: DataConnect 11 Flex - 3 Batch Eng, Prod (Ppl)** Actian DataConnect Flex includes during the term: software license rights, no support services - DataConnect Flex 3 Engines Production Perpetual License. 1 Engine is restricted to 1 Concurrent Integration. Includes Standard Connections. Perpetual License. Optional add-ons: incremental Enterprise Connections, incremental Users, and incremental Non-Production engines (Dev, Test, HotStandby, and DR).| Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms | | | | | | | |
| 01-Jul-2018 | | DC 11 | DC - Any | Each | 1 | $ 112,999.00 | $ 26,547.19 |
| **DC-11-FLX-3-B-ENG-P-SLVR-MNT: Slvr Maint for DC 11 Flex - 3 Batch Eng, Prod** Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 3 Engines. 1 Engine is restricted to 1 Concurrent Integration. Includes Standard Connections. Optional add-ons: incremental Enterprise Connections, incremental Users, and incremental Non-Production engines (Dev, Test, HotStandby, and DR).| Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms | | | | | | | |
| 01-Jul-2018 | 30-Jun-2019 | DC 11 | DC - Any | Each | 1 | $ 23,730.00 | $ 4,034.10 |
| **DC-11-FLX-1-CON-P: DataConnect 11 Flex - 1 Ent Connector, Prod (Ppl)** Actian DataConnect Flex includes during the term: software license rights, no support services - DataConnect Flex additional Enterprise Connector +1. Perpetual License. | Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms | | | | | | | |
| 01-Jul-2018 | | DC 11 | DC - Any | Each | 3 | $ 15,999.00 | $ 11,519.28 |
| **DC-11-FLX-1-CON-P-SLVR-MNT: Slvr Maint for DC 11 Flex - 1 Ent Connector, Prod** Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex additional Enterprise Connector +1| Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms | | | | | | | |
| 01-Jul-2018 | 30-Jun-2019 | DC 11 | DC - Any | Each | 3 | $ 3,360.00 | $ 1,663.20 |

**DC-11-FLX-1-B-ENG-DEV: DataConnect 11 Flex - 1 Batch Eng - Dev/Test (Ppl)**
Actian DataConnect Flex includes during the term: software license rights, no support services - Dev / Test - DataConnect 11 Flex - 1 Batch Engine, Max 5 Dev Users. Perpetual License

| 01-Jul-2018 | | DC 11 | DC - Any | Each | 1 | $ 20,800.00 | $ 4,784.00 |
|---|---|---|---|---|---|---|---|

**DC-11-FLX-1-B-ENG-DEV-SLVR-MNT: Slvr Maint for DC 11 Dev/Test Flex - 1 Batch Eng,**
Actian DataConnect Flex includes during the term: Silver Support Services -Dev / Test - DataConnect 11 Flex - 1 Batch Engine-SLVR-MNT

| 01-Jul-2018 | 30-Jun-2019 | DC 11 | DC - Any | Each | 1 | $ 4,368.00 | $ 725.70 |
|---|---|---|---|---|---|---|---|

**DC-11-FLX-10-USR-P: DataConnect 11 Flex - 10 Dev User, Prod (Ppl)**
Actian DataConnect Flex includes during the term: software license rights, no support services - DataConnect Flex 10 additional users

| 01-Jul-2018 | | DC 11 | DC - Any | Each | 1 | $ 124,999.00 | $ 29,999.76 |
|---|---|---|---|---|---|---|---|

**DC-11-FLX-10-USR-P-SLVR-MNT: Slvr Maint for DC 11 Flex - 10 Dev User, Prod**
Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 10 additional users

| 01-Jul-2018 | 30-Jun-2019 | DC 11 | DC - Any | Each | 1 | $ 26,250.00 | $ 4,200.00 |
|---|---|---|---|---|---|---|---|

**DC-HIM-EU-P: Hybrid Integration Mgr - OnPrem End User internal**
Hybrid Integration Manager - On-Premise for End User internal use. Perpetual License. Actian DataConnect integration engines are extra charge

| 01-Jul-2018 | | DC 11 | DC - Any | Each | 1 | $ 99,999.00 | $ 22,999.77 |
|---|---|---|---|---|---|---|---|

**DC-HIM-EU-P-SLVR-MNT: Hybrid Integration Mgr - OnPrem End User internal - Slvr**
Silver Support for Hybrid Integration Manager - On-Premise for End User internal use. License is extra and Actian DataConnect integration engines are extra charge

| 01-Jul-2018 | 30-Jun-2019 | DC 11 | DC - Any | Each | 1 | $ 21,000.00 | $ 3,780.00 |
|---|---|---|---|---|---|---|---|

**DI-OP-10-ENT-P-PRD-SLVR-MNT: Slvr Maint for DI Enterprise On-Premise v10 Perpetual Prod**
End User Silver Maintenance and Support for Data Integrator - Data Integrator Enterprise On-Premise v10 Perpetual Prod
*3 users, 3 batch engines, 3 real time processors enabled out of the box*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 1 | $ 9,747.00 | $ 9,747.00 |
|---|---|---|---|---|---|---|---|

**DI-AO-BE-ENT-OP-P-PD-SLVR-MNT: Slvr Maint for 1 Additional Batch Engine Enabled Enterprise**
End User Silver Maintenance and Support for Data Integrator - 1 Additional Batch Engine Enabled Enterprise
*total of 5 batch engines enabled*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 2 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|---|---|

**DI-AO-US-ENT-OP-P-PD-SLVR-MNT: Slvr Maint for 1 Additional User Enabled Enterprise**
End User Silver Maintenance and Support for Data Integrator - 1 Additional User Enabled Enterprise
*total of 10 users enabled*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 7 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|---|---|

**DI-OP-10-ENT-P-DEV-SLVR-MNT: Slvr Maint for DI Ent On-Premise v10 Perpetual Dev**
End User Silver Maintenance and Support for Data Integrator - Data Integrator Ent On-Premise v10 Perpetual Development
*3 users, 3 batch engines, 3 real time processors enabled out of the box*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 1 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|---|---|

**DI-AO-BE-ENT-OP-P-DEV-SLVR-MNT: Slvr Maint for 1 Additional Batch Engine Enabled Ent Dev**
End User Silver Maintenance and Support for Data Integrator - 1 Additional Batch Engine Enabled Enterprise Development
*total of 10 batch engines enabled*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 7 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|---|---|

**DI-AO-US-ENT-OP-P-DEV-SLVR-MNT: Slvr Maint for 1 Additional User Enabled Enterprise Dev**
End User Silver Maintenance and Support for Data Integrator - 1 Additional User Enabled Enterprise Development
*total of 10 users enabled*

| 01-Jun-2018 | 28-Feb-2019 | DC 10 | Windows 64-bit | Each | 7 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|---|---|

| Grand Total: | $ 120,000.00 |
|---|---|

## AGREEMENT TERMS

1) ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF THE APPLICABLE SIGNED AGREEMENT WITH ACTIAN CORPORATION (FORMERLY INGRES, OR ANY OF ITS SUBSIDIARIES, INCLUDING PARACCEL, PERVASIVE, AND VERSANT), OR (IF NONE), THE LICENSE AGREEMENT ASSOCIATED WITH THE ABOVE REFERENCED PRODUCT.

2) Customer may not have DataConnect v.11 and DataConnect v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version. The DataConnect v10 licenses shall be terminated effective as of March 29, 2019 and the licenses de-installed after such date unless Customer purchases support for DataConnect v.10 after such date. Upon Actian's request, Customer shall provide Actian with such de-installation certificate signed by an authorized signatory of Customer.

3) For purposes of clarity, the licenses in this Order Confirmation are for Customer's internal business purposes only, and Customer may not: (i) distribute, lease, loan, sell, encumber, sublicense, or otherwise transfer a Product; (ii) permit third-party access to or use of the Products, or use, access, or allow access to the Products in any way to benefit third parties, including, but not limited to operating the Products in a service bureau, SaaS, ASP, or other similar hosted environment; (iii) use a Product to provide or operate hosting or Application Service Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service related to the Products; or (iv) use the Product to process data for third parties (e.g., performing data migrations, conversions, or transformations for Customer's customers).

4) FEES HEREIN ARE EXCLUSIVE OF TAXES, WITHHOLDING, LEVIES, IMPOSTS, AND DUTIES (TAXES) AND CUSTOMER, NOT ACTIAN, IS RESPONSIBLE FOR ANY SUCH TAXES. ANY TERMS AND CONDITIONS IN ANY CUSTOMER PURCHASE ORDER OR SIMILAR DOCUMENT ARE EXPRESSLY REJECTED AND SHALL NOT APPLY TO THE PURCHASES AND LICENSES HEREIN.

5) ACTIAN CORPORATION SUPPORT POLICY: http://www.actian.com/support-services/support#policy

6) ANY TERMS AND CONDITIONS IN ANY CUSTOMER PURCHASE ORDER OR SIMILAR DOCUMENT ARE EXPRESSLY REJECTED AND SHALL NOT APPLY TO THE PURCHASES AND LICENSES HEREIN.

| ACCEPTANCE | ACTIAN | |
|---|---|---|
| SIGNATURE: *Greg J. Cannon* | | **ACTIAN LEGAL APPROVED** |
| NAME: Greg J. Cannon | | Date 6/27/2018 |
| TITLE: Financial Controller | | Initials: *UA* |
| DATE: 6/27/2018 | | |

| ACCEPTANCE | CUSTOMER |
|---|---|
| SIGNATURE: *(signature)* | |
| NAME: Darnell Dent | |
| TITLE: President & CEO | |
| DATE: June 26, 2018 | |

# EXHIBIT D



Login  Support ▾  Products  Solutions  Customers  Partners  Contact Sales  Developers  Careers  Downloads



# Supported Platforms

Supported Platforms | Lifecycle Dates | Policy | FAQ | Contacting Support

Thank you for choosing Actian Support. This document is here to help our customers to better understand the Actian Support Policies and better utilize Actian Support. These policies apply to all Actian product lines, unless otherwise noted.

Please Note: Each one of the 'green highlighted' text sections below are Hyperlinks. The first section is the general policy terms and details for all products. If you are looking for specific product details then 'click' on the hyperlink for the product you are interested in to review the additional terms.

**General Support Policy Details (Applicable to all Actian Products)**

License Terms
Support Policy Terms
Avalanche Services Agreement
Scope of Hot Standby/DR, Test and Developer Licenses
Actian and Dealing with Multi-Vendor Support

Severity and Priority Definitions and Response Times
Information Customers Should Gather Before Requesting Support
Contact Information
Updates and Changes

**Actian Database Management**

Actian Ingres and Actian X
Actian OpenROAD
Actian NoSQL, Database Support and Actian NoSQL FastObjects Support
Actian Zen Embeddable Database (PSQL)

**Actian Data Integration**

Actian DataConnect (Integration)
Actian Business Xchange

**Actian Data Analytics**

Actian Avalanche
Actian Vector and Actian DataFlow

## License Terms

### Subscription

An active subscription includes the use of the licensed product and Enterprise Support during the term. A subscription that is not renewed at the end of the term will be considered expired, and customer will discontinue all use of the software and Support Services.

### Perpetual Licenses

A perpetual license is a software license for a term that does not have a specified end date.

### Flex Licenses

A flex license is a software license which allows the maximum number of cores be counted across multiple servers or nodes.

### Enterprise Licenses

An enterprise license is a software license which provides the full feature set on a single server or node within a cluster.

### Universal Licenses

A universal license is a software license which allows a maximum number of 2 cores enabled on a single server

### Professional Licenses

A professional license is a software license which allows a maximum number of 1 cores enabled on a single server.

## Support Policy Terms

## Support Fees

Support Fees are due and payable annually in advance of a support term, unless otherwise stated in the relevant ordering document.

## Support Period

Support is effective upon the signature of your Order unless stated otherwise in your Order. Once ordered, all Support Services, and Support Fees, are non-cancelable and non-refundable. Actian is not obligated to provide Support Services beyond the end of the term indicated in your Order unless agreed by the parties in a signed agreement or Order.

## Support for Perpetual Licenses

When acquiring Support Services for a perpetual license, all licenses of the same product(irrespective of version) must be supported under an active Actian Support contract. You may not support only a subset of licenses of the same product; those licenses left unsupported must be terminated. With respect to Actian Support Services in relation to perpetual licenses, you hereby represent that you have the appropriate licenses to the Software that is subject to the Support Services. A product may not be deployed in any environment in which a community version of the Product is deployed. Additionally, Actian will not support the use of the OpenROAD software product with the community version of Ingres software.

## Support for Subscription Licenses

When acquiring Support Services for a subscription license, all licenses of the same product (irrespective of version) must be supported under an active Actian Support contract. You may not support only a subset of licenses of the same product; those licenses left unsupported must be terminated. With respect to Actian Support Services in relation to subscription licenses, you hereby represent that you have the appropriate licenses to the Software that is subject to the Support Services. An Actian product may not be deployed in any environment in which a community version of the Actian product is deployed. Additionally, Actian will not support the use of the OpenROAD software product with the community version of Ingres software.

## Support Not Covered

Support services do not cover services for any failure or defect in the licensed product caused by (i) alteration or modification of the licensed product other than by Actian unless such alteration or modification was made under the direction of Actian; (ii) negligence, computer or electrical malfunction; or (iii) use, adjustment, installation or operation other than in accordance with the licensed documentation or with any application or in an environment other than as specified in the licensed documentation, or if you are using a version of the licensed product released more than one year prior to the then current version. Actian does not provide support for any community versions of the products nor do we provide onsite support as part of the normal enterprise support. Onsite services are available as part of a paid for services engagement.

## Support Indemnification

We shall have no support obligations to the extent a support issue could be avoided by use of the latest released Updates or version of the Products.

## Reinstatement of Actian Support for Perpetual Licenses

When Support Services lapse on a perpetual license, it may be reinstated by paying a Lapsed Service Fee, if the maintenance contract on your product has expired. You will be required to pay a Lapsed Service Fee of 1.5X to reinstate support for the lapsed service period in addition to purchasing and activating a one-year service maintenance renewal contract, unless agreed otherwise between Actian and you. The renewal contract's start date will also be backdated to begin coverage from the product's original expiration date. Unsupported licenses are not eligible for Updates, Enterprise Support, or any other Actian services.

## Product Updates

"Update" means any update to the Software which Actian generally makes available to its supported customers, bug fixes, patches, service packs and new releases.

## Right to Accelerate Product Support Lifecycle

Actian may shorten the term of Enterprise support for certain products and versions at its discretion. Actian will make commercially reasonable efforts to announce any change in lifecycle length at least 12 months in advance. These notices are subject to change, and will be updated as necessary.

## User

As used in Actian's price list, "User" is an individual with the appropriate license right, and authorized by customer, to use a single copy of the Actian products which is installed on a single server, regardless of whether the individual is actively using the products at any given time. i.e., a license to a copy of the Actian product must be purchased for each User for each server or device. In addition, deployment of the Actian product on a server will require the purchase of an additional User in addition to the number of individuals.

## Processor

As used in Actian's price list, "Processor" means the individual processor (whether it has one core or multiple cores) within a particular socket. All processors on or with which the Actian Software is running or installed must be licensed. A Server license allows you to use the licensed program on a single specified computer.

## Core

As used in Actian's price list, "Core" means the number of individual physical processor cores within a single system or node. In an environment having multi-core processors, as determined by counting the number of individual physical processor cores within a single Processor, those systems will be priced on a per-core basis. Cores that are in single-core per processor configuration are not eligible for multi-core pricing. Core count is based on the total number of cores and processors in the particular hardware system.

## Socket

Means the equivalent of one CPU having 10 or less cores contained in such CPU.

## Machine/Server

As used in Actian's price list, a "Machine" or "Server" shall mean the Software is licensed to (a) the entire physical computer or server which has a single unique serial number with no limitations placed on the number of Processors; or (b) an instance of a virtual machine or container.

## Node

As used in Actian's price list, a "Node" shall mean the Software is licensed to a Node where Vector has the DataNode service, x100_server and iidbms processes running.

### Avalanche Unit

Avalanche Unit (AU) is a logical measure of the computing cluster capacity that is made available for running queries in Avalanche. A compute cluster can be provisioned on-demand in sizes ranging from 1 AU (smallest cluster) to 128 AU (largest cluster). Generally speaking, the larger the cluster (more AUs), the faster your data loading and analytical query jobs will run.

Avalanche Compute AU-Hours is the unit of consumption of compute capacity on Avalanche Enterprise edition. Each AU-Hour provides 1 AU of compute capacity for an hour. Consumption of AU-Hours is measured on a per-second basis and is the direct product of the size of computing cluster and the time it was kept running. For example, an 8 AU cluster running for 1 hour would consume 8AU-Hours.

Avalanche storage (TB) is the measure of storage capacity reserved for a year. Avalanche stores data in a compressed format (typically 4 – 6x compression from raw data). Storage sizing should also include space for backup copies.

### Virtual Machine

Virtual Machine is an environment where a Virtual Machine has been implemented either by Software emulation or Hardware virtualization.

### Virtual Processor

In a Virtual Machine environment, "Virtual Processor" means an individual virtual processor (whether it has access to one core or multiple cores) within a particular Virtual Machine configuration. All Virtual Processors on or with which the Actian Software is running or installed must be licensed. Where the Virtual Processor count exceeds the physical machine processor count, all additional Virtual Processors must be individually licensed.

### Virtual Core

In a Virtual Machine environment, the Virtual Core count is the number of virtual cores that are designated or able to run the Actian Software within the Virtual Machine. In an environment having multiple Virtual Cores per Virtual Processor those systems will be priced on a per Virtual Core basis (and if such Virtual Core count is an odd number, it will be rounded up to the next multiple of 2). Virtual Cores that are in single Virtual Core per Virtual Processor configuration are not eligible for multi-core pricing. Where the Virtual Core count exceeds the physical machine core count, all additional Virtual Cores must be individually licensed (and if such Virtual Core count is an odd number, it will be rounded up to the next multiple of 2).

### Hyper Threading and Virtual Processors / Cores

Hyper Threading and/or Virtual Processors / Cores, the Core Count required to be licensed is the greatest number of hyper threads, virtual processors or virtual cores, on the physical host(s) or Virtual Machine instances on the hardware on which the Actian Software is installed or able to run. Actian software sees each thread as being a CPU core therefore each thread must be individually licensed on the same basis as CPU cores (either physical or virtual depending on the deployment model, with a minimum count of two (2) cores per physical host or virtual machine instance).

### Source System Data

Is the total size of uncompressed text files containing all data extracted out of the source system(s) to represent the current data in a Vectorwise database.

## Scope of Hot Standby/DR, Test and Developer Licenses

If we have granted to you in writing a Hot Standby/DR, Test or Developer license, the following definitions apply to those licenses:

#### Cold and Hot Standby/DR Licenses

For Hot and Cold Standby/DR licenses, the scope is limited to testing and installation of the software ("Standby Software") on a backup system for disaster-recovery purposes (i.e., where the primary installation of the software becomes unavailable for use), and the Standby Software cannot be used for production purposes, unless and only for so long as the primary production copy of the software is unavailable and not in use. For Cold Standby/DR licenses, Standby Software must be inactive when the primary production copy of the software is in use. Hot or Cold Standby/DR license rights are valid only if you have a concurrent full production use license for the identical software product, product version, and duration as the Standby Software license, and such production software is deployed and licensed for a system with equal quantity and at least as many cores as the Standby Software license.

#### Test Licenses

For Test licenses, the software may be used only for purposes reasonably associated with testing of a software application in a non-production environment (such as, but not limited to, recreating problems affecting a production environment, creation of test cases, testing new releases or applications that are planned for migration into the production environment), and not for production use, normal operations, processing transactions, handling workloads for business purposes, or for any other purpose.

#### Developer Licenses

For Developer licenses, the scope is limited to use of the software only for the purpose of developing, testing, prototyping and demonstrating your applications that interact with the software, and not for commercial or production use or any other purpose. You may not use the application developed under this license with the software for any internal data processing or for any commercial or production purposes, without obtaining a production license to the software.

### Actian and Dealing with Multi-Vendor Support

Actian is dedicated to providing the highest level of support to its customers. Where other products may be involved in an Actian solution, Actian support utilizes the industry organization of Technical Support Alliance Network (TSANet) to collaborate with other partners. TSANet is a Not-For-Profit worldwide alliance with over 500 members dedicated to working together to solve mutual customer, multi-vendor issues.

Actian participates at the highest membership level of Global Premium and has been a member since 2009. Actian is very active in the organization and continues to participate in multiple levels of leadership to drive the organization to better providing a better multi-vendor experience for customers. Actian is an elected member of the Board of Directors and has served both in Board and Officer positions.



## Severity and Priority Definitions and Response Times

## Severity Definitions

Support issues may be submitted either electronically or via telephone. To ensure that we treat your issue with the appropriate level of significance, when raising an issue, you are responsible to accurately assign a severity level. The following table provides some guidance as to how the severity should be defined.

**Severity 1:** Critical Business Impact - Any unscheduled, total loss of a production system, application or service, or any loss of a major business function.

**Severity 2:** Major Business Impact - Any failure which causes a partial loss or degradation of a production system or service, or has the potential to escalate to a Severity 1 if left unresolved.

**Severity 3:** Minimal Business Impact - Any non-critical system error or minor service loss which has minimal business impact or risk.

**Severity 4:** No Business Impact - Any incident which causes no loss of a production service, and which has no business impact.

When you have a Severity 1 incident, we want to work on your Severity 1 incident until it is resolved and also requires your technical team be available 24 hours a day to work with us so that any further documentation required to continue work can be obtained, and to provide further information and assistance. If your technical team is not available to provide the required documentation, information or assistance, the severity of the incident may be downgraded to a Severity 2, and shall remain downgraded until all required documentation, information, and assistance is provided. Actian's assistance with resolution of an incident is contingent on your team's cooperation and assistance.

*Developer and Silver Support does not include 24 hour commitment and response guidelines for Severity 1 incident requests.

## Priority Definitions

**Blocker - HIPER Classifications (High Impact and Pervasive Errors)** requiring a formal notification to all customers in the base. Includes items that are: Data Integrity Issues (Existing Customer Data is being deleted/duplicated/altered incorrectly), Security Vulnerabilities, performance that causes a severe impact to throughput, a defect that prevents the use of the product (component/connector/design tool/engine), defect halts customer's production, any of the major applications will not run, install or operate, Any of the major tools cause irreparable damage to the user's system, problems that could affect all customers negatively and no workaround available.

**Critical** – Includes items that are: Case has no work around, product will not install and implementation cannot begin or move forward, a defect that causes the product to crash or result in the loss of data, the application fails during execution (e.g. GPF or Automation error), to the degree that it is unusable, the application has failures that cause the loss of significant amounts of work (e.g., can't save designs or corrupts the database).

**Major** - Includes items that are: Have a difficult and/or manual work around that is not business sustainable, expected functionality is implemented incorrectly, production is partially down, application productivity is slowed down to the point that it delays the customer's production.

**Normal** - Includes items that are: May have a reasonable work around and expected functionality is partially working (or not at all for non-critical features), production is up, but functionality or performance through workarounds is unacceptable, the software executes, but errors persist, the software does not work in certain environments due to issues with system configuration or resources.

**Minor** – Includes items that are: Graphical User Interface defects that do not effect production, functional error or defect that has a simple work around, a normal error with a non-major product or component, and major documentation defects.

**Trivial** - Includes items that are: Minor documentation defects, a defect that would, in all likelihood, not affect any customers, a defect that is only related to a very specific minor outlying case.

## Support Response Times by Severity

**Severity 1:** 1 hour 24X7*

**Severity 2:** 2 hours during business hours

**Severity 3:** 4 hours during business hours

**Severity 4:** End of business day

*This response level is only available to customers with Gold or higher support services.

## Information Customers Should Gather Before Requesting Support

- Your company name and seven-character site ID for Enterprise Support or Extended Support program:
  - Name of the product
  - Release of the product
  - Service Pack (SP) of the product (e.g. maintenance level)
  - Fixes applied above the base product or Service Pack
- Operating system (OS):
  - OS release and SP
  - Language of the OS (if applicable)
  - Fixes applied to the OS or SP
- What is the severity, priority and business impact of the problem?
- Which environment is affected (e.g. production, test, or development)?
- Describe the incident in detail by product as follows:

- Collecting Information for Actian X Cases
- Collecting Information for Actian X Query Cases
- Collecting Information for Vector Cases
- Collecting Information for DataFlow Cases
- Collecting Information for Avalanche Cases
- Collecting Information for Actian OpenROAD Cases
- Collecting Information for NoSQL Object Database (VOD) and Actian JPA Cases
- Collecting Information for Actian DataConnect
- Collecting Information for Actian DataCloud
- Collecting Information for Actian Zen

## Contact Information

Contact information by country can be found on our support contacts page.

## Updates and Changes

The Actian Support Policies may be updated from time to time and are subject to change at Actian's discretion; provided however, Actian's service commitments per its Support Policies will not be materially reduced as compared to the Actian Support Policies in effect at the start of your support term (typically one year) during the then-current support term.



© 2021 Actian Corporation, All Rights Reserved.

EXHIBIT E



**Sales Order Confirmation: 729938**
**Prepared by:** Heather Bradberry
**Phone:** +1 512 231 6006
**Email:** *heather.bradberry@actian.com*

Actian Corporation
2300 Geng Road, Suite 150
Palo Alto, CA 94303
United States
Phone: (650) 587-5500
Fax: (650) 649-2358

**Customer Account Number:** 1111298
**Date:** April 11, 2019

**Billing Terms:** Annual in Advance
**Payment Terms:** Net 30
**Validity Period:** through June 27, 2019
**Currency:** USD

**Message:**

**BILL TO:**
SHA, LLC dba FirstCare Health Plans
Accounts Payable
12940 N Highway 183
Austin, Texas 78750-3203
United States

**SHIP TO:**
SHA, LLC dba FirstCare Health Plans
Paula Guerrero
12940 N Highway 183
Austin, TX 78750-3203
United States

| # | Product | Start Date | End Date | Version | Platform | Unit | Quantity | Unit Price | Total Price |
|---|---------|-----------|----------|---------|----------|------|----------|-----------|-------------|
| 2 | DC-11-FLX-3-B-ENG-P-SLVR-MNT | July 1, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 1.00 | $4,235.81 | $4,235.81 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 3 Engines. 1 Engine is restricted to 1 Concurrent Integration. Includes Standard Connections. Optional add-ons: incremental Enterprise Connections, incremental Users, and incremental Non-Production engines (Dev, Test, HotStandby, and DR).| Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms* | | | | | | | | |
| 4 | DC-11-FLX-1-CON-P-SLVR-MNT | July 1, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 3.00 | $582.12 | $1,746.36 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex  additional Enterprise Connector +1|  Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms* | | | | | | | | |
| 6 | DC-11-FLX-1-B-ENG-DEV-SLVR-MNT | July 1, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 1.00 | $761.80 | $761.80 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services -Dev / Test - DataConnect 11 Flex - 1 Batch Engine-SLVR-MNT* | | | | | | | | |
| 8 | DC-11-FLX-10-USR-P-SLVR-MNT | July 1, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 1.00 | $4,410.00 | $4,410.00 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 10 additional users* | | | | | | | | |
| 10 | DC-HIM-EU-P-SLVR-MNT | July 1, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 1.00 | $3,969.00 | $3,969.00 |
| | *Silver Support for Hybrid Integration Manager - On-Premise for End User internal use. License is extra and Actian DataConnect integration engines are extra charge* | | | | | | | | |

**GRAND TOTAL**          **$15,122.96**

DocuSign Envelope ID: 23D7:1CF8-C6B9-4D74-9EEB-624D5BD79988



**Sales Order Confirmation: 729938**
**Prepared by:** Heather Bradberry
**Phone:** +1 512 231 6006
**Email:** *heather.bradberry@actian.com*

## Terms and Conditions

1. ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF THE APPLICABLE SIGNED AGREEMENT WITH ACTIAN CORPORATION (FORMERLY INGRES, OR ANY OF ITS SUBSIDIARIES, INCLUDING PARACCEL, PERVASIVE, AND VERSANT), OR (IF NONE), THE LICENSE AGREEMENT ASSOCIATED WITH THE ABOVE REFERENCED PRODUCT.
2. FEES HEREIN ARE EXCLUSIVE OF TAXES, WITHHOLDING, LEVIES, IMPOSTS, AND DUTIES (TAXES) AND CUSTOMER, NOT ACTIAN, IS RESPONSIBLE FOR ANY SUCH TAXES.
3. ANY TERMS AND CONDITIONS IN ANY CUSTOMER PURCHASE ORDER OR SIMILAR DOCUMENT ARE EXPRESSLY REJECTED AND SHALL NOT APPLY TO THE PURCHASES AND LICENSES HEREIN.
4. ACTIAN CORPORATION SUPPORT POLICY: https://supportservices.actian.com/support-services/support#policy

ACCEPTED AND AGREED BY:

**CUSTOMER**

Signature: _____

Name: Jeffrey C. Ingrum

Title: President & CEO

Date: May 30, 2019

**ACTIAN**

Signature: _____
DocuSigned by:

Name: Marc Monahan

Title: VP, Finance

Date: 5/31/2019



ACTIAN
LEGAL
APPROVED
Date 5/31/2019
Initials:

EXHIBIT F



**Sales Order Confirmation: 756901**
**Prepared by:** Phil Hagemeier
**Phone:** +1 512 577 4679
**Email:** *phil.hagemeier@actian.com*

Actian Corporation
2300 Geng Road, Suite 150
Palo Alto, CA 94303
United States
Phone: (650) 587-5500
Fax: (650) 649-2358

**Customer Account Number:** 1111298
**Date:** May 29, 2019

**Billing Terms:** Annual in Advance
**Payment Terms:** Net 30
**Validity Period:** through June 28, 2019
**Currency:** USD

**Message:**

| BILL TO: | SHIP TO: |
|---|---|
| SHA, LLC dba FirstCare Health Plans | SHA, LLC dba FirstCare Health Plans |
| Accounts Payable | Paula Guerrero |
| 12940 N Highway 183 | 12940 N Highway 183 |
| Austin, Texas 78750-3203 | Austin, TX 78750-3203 |
| United States | United States |
| accountspayableswhp@bswhealth.org | paula.guerrero@bswhealth.org |

| # | Product | Start Date | End Date | Version | Platform | Unit | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 1 | DC-11-FLX-10-USR-P | June 27, 2019 | | DC 11 | DC - Any | Each | 2.00 | $49,999.60 | $99,999.20 |
| | *Actian DataConnect Flex includes during the term: software license rights, no support services - DataConnect Flex 10 additional users* | | | | | | | | |
| 2 | DC-11-FLX-10-USR-P-SLVR-MNT | June 27, 2019 | June 30, 2020 | DC 11 | DC - Any | Each | 2.00 | $8,999.84 | $17,999.69 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 10 additional users* | | | | | | | | |

| GRAND TOTAL | $117,998.89 |
|---|---|



**Sales Order Confirmation: 756901**
**Prepared by:** Phil Hagemeier
**Phone:** +1 512 577 4679
**Email:** *phil.hagemeier@actian.com*

## Terms and Conditions

1. ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF THE APPLICABLE SIGNED AGREEMENT WITH ACTIAN CORPORATION (FORMERLY INGRES, OR ANY OF ITS SUBSIDIARIES, INCLUDING PARACCEL, PERVASIVE, AND VERSANT), OR (IF NONE), THE LICENSE AGREEMENT ASSOCIATED WITH THE ABOVE REFERENCED PRODUCT.
2. FEES HEREIN ARE EXCLUSIVE OF TAXES, WITHHOLDING, LEVIES, IMPOSTS, AND DUTIES (TAXES) AND CUSTOMER, NOT ACTIAN, IS RESPONSIBLE FOR ANY SUCH TAXES.
3. ANY TERMS AND CONDITIONS IN ANY CUSTOMER PURCHASE ORDER OR SIMILAR DOCUMENT ARE EXPRESSLY REJECTED AND SHALL NOT APPLY TO THE PURCHASES AND LICENSES HEREIN.
4. ACTIAN CORPORATION SUPPORT POLICY: https://supportservices.actian.com/support-services/support#policy

ACCEPTED AND AGREED BY:

**CUSTOMER**

Signature: *Janet Watson*

Name: *Janet Watson*

Title: *VP Strategic Sourcing*

Date: *6/27/19*

**ACTIAN**



Signature: *DocuSigned by:*
9CB420545E554C2...

Name: Marc Monahan

Title: VP, Finance

Date: 6/27/2019

ACTIAN
LEGAL
**APPROVED**
Date 6/27/2019
Initials: *LH*

# EXHIBIT G



**Sales Order Confirmation: 763298**
**Prepared by:** Jillian Zeber
**Phone:** +1 512 231 6717
**Email:** *jillian.zeber@actian.com*

Actian Corporation
2300 Geng Road, Suite 150
Palo Alto, CA 94303
United States
Phone: (650) 587-5500
Fax: (650) 649-2358

**Customer Account Number:** 1111298
**Date:** June 5, 2020

**Billing Terms:** Annual in Advance
**Payment Terms:** Net 30
**Validity Period:** through June 29, 2020
**Currency:** USD

**Message:**

**BILL TO:**
SHA, LLC dba FirstCare Health Plans
Accounts Payable
12940 N Highway 183
Austin, Texas 78750-3203
United States
accountspayable@firstcare.com

**SHIP TO:**
SHA, LLC dba FirstCare Health Plans
Paula Guerrero
12940 N Highway 183
Austin, TX 78750-3203
United States
pguerrero@firstcare.com

| # | Product | Start Date | End Date | Version | Platform | Unit | Quantity | Unit Price | Total Price |
|---|---------|-----------|----------|---------|----------|------|----------|-----------|-------------|
| 1 | DC-11-FLX-3-B-ENG-P-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 1.00 | $4,871.18 | $4,871.18 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 3 Engines. 1 Engine is restricted to 1 Concurrent Integration. Includes Standard Connections. Optional add-ons: incremental Enterprise Connections, incremental Users, and incremental Non-Production engines (Dev, Test, HotStandby, and DR).| Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms* | | | | | | | | |
| 2 | DC-11-FLX-1-CON-P-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 3.00 | $669.44 | $2,008.31 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex  additional Enterprise Connector +1|   Standard and Enterprise Connectors are defined at http://supportservices.actian.com/support-services/support#platforms* | | | | | | | | |
| 3 | DC-11-FLX-1-B-ENG-DEV-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 1.00 | $876.07 | $876.07 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services -Dev / Test - DataConnect 11 Flex - 1 Batch Engine-SLVR-MNT* | | | | | | | | |
| 4 | DC-11-FLX-10-USR-P-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 1.00 | $5,071.50 | $5,071.50 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 10 additional users* | | | | | | | | |
| 5 | DC-HIM-EU-P-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 1.00 | $4,564.35 | $4,564.35 |
| | *Silver Support for Hybrid Integration Manager - On-Premise for End User internal use. License is extra and Actian DataConnect integration engines are extra charge* | | | | | | | | |
| 6 | DC-11-FLX-10-USR-P-SLVR-MNT | July 1, 2020 | June 30, 2021 | DC 11 | DC – Any | Each | 2.00 | $10,349.82 | $20,699.64 |
| | *Actian DataConnect Flex includes during the term: Silver Support Services - DataConnect Flex 10 additional users* | | | | | | | | |
| 7 | DI-OP-10-ENT-P-PRD-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 1.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - Data Integrator Enterprise On-Premise v10 Perpetual Prod* | | | | | | | | |



| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 8 | DI-AO-BE-ENT-OP-P-PD-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 2.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - 1 Additional Batch Engine Enabled Enterprise* | | | | | | | | |
| 9 | DI-AO-US-ENT-OP-P-PD-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 7.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - 1 Additional User Enabled Enterprise* | | | | | | | | |
| 10 | DI-OP-10-ENT-P-DEV-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 1.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - Data Integrator Ent On-Premise v10 Perpetual Development* | | | | | | | | |
| 11 | DI-AO-BE-ENT-OP-P-DEV-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 7.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - 1 Additional Batch Engine Enabled Enterprise Development* | | | | | | | | |
| 12 | DI-AO-US-ENT-OP-P-DEV-SLVR-MNT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 7.00 | $0.00 | $0.00 |
| | *End User Silver Maintenance and Support for Data Integrator - 1 Additional User Enabled Enterprise Development* | | | | | | | | |
| 13 | DI-OP-10-P-SLVR-MNT-EXT | March 30, 2019 | June 30, 2021 | DC 10 | DC – Any | Each | 1.00 | $0.00 | $0.00 |
| | *End User Silver Extended Support for Data Integrator* | | | | | | | | |

| **GRAND TOTAL** | **$38,091.06** |
|---|---|



**Sales Order Confirmation: 763298**
**Prepared by:** Jillian Zeber
**Phone:** +1 512 231 6717
**Email:** *jillian.zeber@actian.com*

## Terms and Conditions

1. ACCEPTANCE OF THIS ORDER IS SUBJECT TO THE TERMS OF THE APPLICABLE SIGNED AGREEMENT WITH ACTIAN CORPORATION (FORMERLY INGRES, OR ANY OF ITS SUBSIDIARIES, INCLUDING PARACCEL, PERVASIVE, AND VERSANT), OR (IF NONE), THE LICENSE AGREEMENT ASSOCIATED WITH THE ABOVE REFERENCED PRODUCT.

2. Customer acknowledges and agrees that Customer may not have DataConnect v.11 and Data Integrator v.10 deployed simultaneously unless support is in effect for all instances of the software product regardless of version. Customer represents, warrants and agrees that if Customer does not purchase support for Data Integrator v.10 for the period after June 30, 2021, the Data Integrator v.10 licenses shall be terminated effective as of June 30, 2021. Upon Actian's request, Customer shall provide Actian with such de-installation certificate signed by an authorized signatory of Customer.

3. FEES HEREIN ARE EXCLUSIVE OF TAXES, WITHHOLDING, LEVIES, IMPOSTS, AND DUTIES (TAXES) AND CUSTOMER, NOT ACTIAN, IS RESPONSIBLE FOR ANY SUCH TAXES.

4. ANY TERMS AND CONDITIONS IN ANY CUSTOMER PURCHASE ORDER OR SIMILAR DOCUMENT ARE EXPRESSLY REJECTED AND SHALL NOT APPLY TO THE PURCHASES AND LICENSES HEREIN.

5. ACTIAN CORPORATION SUPPORT POLICY: https://supportservices.actian.com/support-services/support#policy

ACCEPTED AND AGREED BY:

**CUSTOMER**

| | |
|---|---|
| Signature: | *Ali Kheirandish* |
| | A91AC7195F5941B... |
| Name: | Ali Kheirandish |
| Title: | Director Commodities |
| Date: | 6/30/2020 |

**ACTIAN**

| | |
|---|---|
| Signature: | [signature] |
| | 9CB420545E554C2... |
| Name: | Marc Monahan |
| Title: | VP, Finance |
| Date: | 6/30/2020 |



Actian Support Policy

July 1, 2020 to June 30, 2021

Thank you for choosing Actian Support. This document is here to help our customers to better understand the Actian Support Policies and better utilize Actian Support. These policies apply to all Actian product lines, unless otherwise noted.

License Terms
Support Policy Terms
Scope of Hot Standby/DR, Test and Developer Licenses
Actian and Dealing with Multi-Vendor Support

Severity and Priority Definitions and Response Times
Information Customers Should Gather Before Requesting Support
Contact Information
Updates and Changes

## Actian Database Management

Actian Ingres and Actian X
Actian OpenROAD
Actian NoSQL Database Support and Actian NoSQL FastObjects Support
Actian Zen Embeddable Database (PSQL)

## Actian Data Integration

Actian DataConnect (Integration)
Actian Business Xchange

## Actian Data Analytics

Actian Avalanche
Actian Vector and Actian DataFlow

# License Terms

## Subscription

An active subscription includes the use of the licensed product and Enterprise Support during the term. A subscription that is not renewed at the end of the term will be considered expired, and customer will discontinue all use of the software

and Support Services. Actian does not provide support for the open source version of the products and a Product may not be deployed in the same production environment in which an open source version of the Product is deployed.

## Perpetual Licenses

A perpetual license is a software license for a term that does not have a specified end date.

## Flex Licenses

A flex license is a software license which allows the maximum number of cores be counted across multiple servers or nodes.

## Enterprise Licenses

An enterprise license is a software license which provides the full feature set on a single server or node within a cluster.

## Universal Licenses

A universal license is a software license which allows a maximum number of 2 cores enabled on a single server

## Professional Licenses

A professional license is a software license which allows a maximum number of 1 cores enabled on a single server.

# Support Policy Terms

## Support Fees

Support Fees are due and payable annually in advance of a support term, unless otherwise stated in the relevant ordering document.

## Support Period

Support is effective upon the signature of your Order unless stated otherwise in your Order. Once ordered, all Support Services, and Support Fees, are non-cancelable and non-refundable. Actian is not obligated to provide Support Services beyond the end of the term indicated in your Order unless you renew

your Support Services on or before the expiration date by agreement between Actian and you.

## Support for Perpetual Licenses

When acquiring Support Services for a perpetual license, all licenses of the same product(irrespective of version) must be supported under an active Actian Support contract. You may not support only a subset of licenses of the same product; those licenses left unsupported must be terminated. With respect to Actian Support Services in relation to perpetual licenses, you hereby represent that you have the appropriate licenses to the Software that is subject to the Support Services. A product may not be deployed in any environment in which a community version of the Product is deployed.

## Support Not Covered

Support services do not cover services for any failure or defect in the licensed product caused by (i) alteration or modification of the licensed product other than by Actian unless such alteration or modification was made under the direction of Actian; (ii) negligence, computer or electrical malfunction; or (iii) use, adjustment, installation or operation other than in accordance with the licensed documentation or with any application or in an environment other than as specified in the licensed documentation, or if you are using a version of the licensed product released more than one year prior to the then current version. Actian does not provide support for any community versions of the products nor do we provide onsite support as part of the normal enterprise support. Onsite services are available as part of a paid for services engagement.

## Support Indemnification

We shall have no support obligations to the extent a support issue could be avoided by use of the latest released Updates or version of the Products.

## Reinstatement of Actian Support for Perpetual Licenses

When Support Services lapse on a perpetual license, it can be reinstated by paying all of the back support due for the unsupported period, plus support for one year going forward, unless agreed otherwise between Actian and you. Unsupported licenses are not eligible for Updates, Enterprise Support, or any other Actian services.

## Product Updates

"Update" means any update to the Software which Actian generally makes available to its supported customers, bug fixes, patches, service packs and new releases.

## Right to Accelerate Product Support Lifecycle

Actian may shorten the term of Enterprise support for certain products and versions at its discretion. Actian will make commercially reasonable efforts to announce any change in lifecycle length at least 12 months in advance. These notices are subject to change, and will be updated as necessary.

## User

As used in Actian's price list, "User" is an individual with the appropriate license rights, and authorized by customer, to use the Actian products which are installed on a single server or multiple servers, regardless of whether the individual is actively using the products at any given time.

## Processor

As used in Actian's price list, "Processor" means the individual processor (whether it has one core or multiple cores) within a particular socket. All processors on or with which the Actian Software is running or installed must be licensed. A Server license allows you to use the licensed program on a single specified computer.

## Core

As used in Actian's price list, "Core" means the number of individual physical processor cores within a single system or node. In an environment having multi-core processors, as determined by counting the number of individual physical processor cores within a single Processor, those systems will be priced on a per-core basis. Cores that are in single-core per processor configuration are not eligible for multi-core pricing. Core count is based on the total number of cores and processors in the particular hardware system.

## Socket

Means the equivalent of one CPU having 10 or less cores contained in such CPU.

## Machine/Server

As used in Actian's price list, a "Machine" or "Server" shall mean the Software is licensed to (a) the entire physical computer or server which has a single unique serial number with no limitations placed on the number of Processors; or (b) an instance of a virtual machine or container.

## Node

As used in Actian's price list, a "Node" shall mean the Software is licensed to a Node where Vector has the DataNode service, x100_server and iidbms processes running.

## Avalanche Unit

As used in Actian's price list, an Avalanche Unit (AU) is a logical measure of the computing capacity of the cluster and includes provisioned storage up to one-half TiB, compressed between 4 to 6 times. Assuming a compression factor of 5, an 8 AU cluster (4 TiB of provisioned storage) would store about 20 TiB of raw, uncompressed data. Compression factors may vary based on the data. Generally speaking, the more AUs, the faster your data loading and queries will be.

## Virtual Machine

Virtual Machine is an environment where a Virtual Machine has been implemented either by Software emulation or Hardware virtualization.

## Virtual Processor

In a Virtual Machine environment, "Virtual Processor" means an individual virtual processor (whether it has access to one core or multiple cores) within a particular Virtual Machine configuration. All Virtual Processors on or with which the Actian Software is running or installed must be licensed. Where the Virtual Processor count exceeds the physical machine processor count, all additional Virtual Processors must be individually licensed.

## Virtual Core

In a Virtual Machine environment, the Virtual Core count is the number of virtual cores that are designated or able to run the Actian Software within the Virtual Machine. In an environment having multiple Virtual Cores per Virtual Processor those systems will be priced on a per Virtual Core basis (and if such Virtual Core count is an odd number, it will be rounded up to the next multiple of 2). Virtual Cores that are in single Virtual Core per Virtual Processor configuration are not

eligible for multi-core pricing. Where the Virtual Core count exceeds the physical machine core count, all additional Virtual Cores must be individually licensed (and if such Virtual Core count is an odd number, it will be rounded up to the next multiple of 2).

## Hyper Threading and Virtual Processors / Cores

Hyper Threading and/or Virtual Processors / Cores, the Core Count required to be licensed is the greatest number of hyper threads, virtual processors or virtual cores, on the physical host(s) or Virtual Machine instances on the hardware on which the Actian Software is installed or able to run. Actian software sees each thread as being a CPU core therefore each thread must be individually licensed on the same basis as CPU cores (either physical or virtual depending on the deployment model, with a minimum count of two (2) cores per physical host or virtual machine instance).

## Source System Data

Is the total size of uncompressed text files containing all data extracted out of the source system(s) to represent the current data in a Vectorwise database.

## Scope of Hot Standby/DR, Test and Developer Licenses

If we have granted to you in writing a Hot Standby/DR, Test or Developer license, the following definitions apply to those licenses:

### Cold and Hot Standby/DR Licenses

For Hot and Cold Standby/DR licenses, the scope is limited to testing and installation of the software ("Standby Software") on a backup system for disaster-recovery purposes (i.e., where the primary installation of the software becomes unavailable for use), and the Standby Software cannot be used for production purposes, unless and only for so long as the primary production copy of the software is unavailable and not in use. For Cold Standby/DR licenses, Standby Software must be inactive when the primary production copy of the software is in use. Hot or Cold Standby/DR license rights are valid only if you have a concurrent full production use license for the identical software product, product version, and duration as the Standby Software license, and such production software is deployed on and licensed for a system with at least as many cores as the Standby Software.

### Test Licenses

For Test licenses, the software may be used only for purposes reasonably associated with testing of a software application in a non-production environment (such as, but not limited to, recreating problems affecting a production environment, creation of test cases, testing new releases or applications that are planned for migration into the production environment), and not for production use, normal operations, processing transactions, handling workloads for business purposes, or for any other purpose.

**Developer Licenses**

For Developer licenses, the scope is limited to use of the software only for the purpose of developing, testing, prototyping and demonstrating your applications that interact with the software, and not for commercial or production use or any other purpose. You may not use the application developed under this license with the software for any internal data processing or for any commercial or production purposes, without obtaining a production license to the software.

## Actian and Dealing with Multi-Vendor Support

Actian is dedicated to providing the highest level of support to its customers. Where other products may be involved in an Actian solution, Actian support utilizes the industry organization of Technical Support Alliance Network (TSANet) to collaborate with other partners. TSANet is a Not-For-Profit worldwide alliance with over 500 members dedicated to working together to solve mutual customer, multi-vendor issues.

Actian participates at the highest membership level of Global Premium and has been a member since 2009. Actian is very active in the organization and continues to participate in multiple levels of leadership to drive the organization to better providing a better multi-vendor experience for customers. Actian is an elected member of the Board of Directors and has served both in Board and Officer

DocuSign Envelope ID: 0D2EFB35-FECC-4FAE-BA11-CB5A1C7940E3

positions.



# Severity and Priority Definitions and Response Times

## Severity Definitions

Support issues may be submitted either electronically or via telephone. To ensure that we treat your issue with the appropriate level of significance, when raising an issue, you are responsible to accurately assign a severity level. The following table provides some guidance as to how the severity should be defined.

**Severity 1:** Critical Business Impact - Any unscheduled, total loss of a production system, application or service, or any loss of a major business function.

**Severity 2:** Major Business Impact - Any failure which causes a partial loss or degradation of a production system or service, or has the potential to escalate to a Severity 1 if left unresolved.

**Severity 3:** Minimal Business Impact - Any non-critical system error or minor service loss which has minimal business impact or risk.

**Severity 4:** No Business Impact - Any incident which causes no loss of a production service, and which has no business impact.

When you have a Severity 1 incident, we want to work on your Severity 1 incident until it is resolved and also requires your technical team be available 24 hours a day to work with us so that any further documentation required to continue work can be obtained, and to provide further information and assistance. If your technical team is not available to provide the required documentation, information or assistance, the severity of the incident may be downgraded to a Severity 2, and shall remain downgraded until all required documentation, information, and assistance is provided. Actian's assistance with resolution of an incident is contingent on your team's cooperation and assistance.

*Developer and Silver Support does not include 24 hour commitment and response guidelines for Severity 1 incident requests.

## Priority Definitions

**Blocker - HIPER Classifications (High Impact and Pervasive Errors)** requiring a formal notification to all customers in the base. Includes items that are: Data Integrity Issues (Existing Customer Data is being deleted/duplicated/altered incorrectly), Security Vulnerabilities, performance that causes a severe impact to throughput, a defect that prevents the use of the product (component/connector/design tool/engine), defect halts customer's production, any of the major applications will not run, install or operate, Any of the major tools cause irreparable damage to the user's system, problems that could affect all customers negatively and no workaround available.

**Critical** – Includes items that are: Case has no work around, product will not install and implementation cannot begin or move forward, a defect that causes the product to crash or result in the loss of data, the application fails during execution (e.g. GPF or Automation error), to the degree that it is unusable, the application has failures that cause the loss of significant amounts of work (e.g., can't save designs or corrupts the database).

**Major** - Includes items that are: Have a difficult and/or manual work around that is not business sustainable, expected functionality is implemented incorrectly, production is partially down, application productivity is slowed down to the point that it delays the customer's production.

**Normal** - Includes items that are: May have a reasonable work around and expected functionality is partially working (or not at all for non-critical features), production is up, but functionality or performance through workarounds is unacceptable, the software executes, but errors persist, the software does not

work in certain environments due to issues with system configuration or resources.

**Minor** – Includes items that are: Graphical User Interface defects that do not effect production, functional error or defect that has a simple work around, a normal error with a non-major product or component, and major documentation defects.

**Trivial** – Includes items that are: Minor documentation defects, a defect that would, in all likelihood, not affect any customers, a defect that is only related to a very specific minor outlying case.

## Support Response Times by Severity

**Severity 1:** 1 hour 24X7*

**Severity 2:** 2 hours during business hours

**Severity 3:** 4 hours during business hours

**Severity 4:** End of business day

*This response level is only available to customers with Gold or higher support services.

# Information Customers Should Gather Before Requesting Support

- Your company name and seven-character site ID for Enterprise Support or Extended Support program:
- Name of the product
- Release of the product
- Service Pack (SP) of the product (e.g. maintenance level)
- Fixes applied above the base product or Service Pack
- Operating system (OS):
- OS release and SP
- Language of the OS (if applicable)
- Fixes applied to the OS or SP
- What is the severity, priority and business impact of the problem?

- Which environment is affected (e.g. production, test, or development)?
- Describe the incident in detail by product as follows:
- Collecting Information for Actian X Cases
- Collecting Information for Actian X Query Cases
- Collecting Information for Vector Cases
- Collecting Information for DataFlow Cases
- Collecting Information for Avalanche Cases
- Collecting Information for Actian OpenROAD Cases
- Collecting Information for NoSQL Object Database (VOD) and Actian JPA Cases
- Collecting Information for Actian DataConnect
- Collecting Information for Actian DataCloud
- Collecting Information for Actian Zen

# Contact Information

Contact information by country can be found on our support contacts page.

# Updates and Changes

The Actian Support Policies may be updated from time to time and are subject to change at Actian's discretion; provided however, Actian's service commitments per its Support Policies will not be materially reduced as compared to the Actian Support Policies in effect at the start of your support term (typically one year) during the then-current support term.

# Actian DataConnect Support Lifecycle and Levels

## Product Support Lifecycle Policy

This policy explains Actian Corporation's product support lifecycle policy. Whether purchased directly from Actian, or from Actian partners or resellers, these policies are designed to standardize product lifecycle expectancies and assist you in developing your internal release implementation and migration plans. Actian Corporation strives to provide the best quality Software and Support Services. In order to provide best in class software solutions, Actian has defined a predictable Product Support Lifecycle Policy to give you plenty of lead-time to plan and manage your upgrade and release processes.

## Lifecycle Phases

Actian provides distinct product development phases and synchronized product support lifecycle offerings. By understanding these phases, you are better able to plan for your software support needs and your migration timeframes. The term General Availability (GA) is key to understanding each lifecycle phase and starts the clock.

| Lifecycle Stage | Term |
|---|---|
| General Availability | Years 1-2 |
| Extended Availability | Years 3-4 |
| Obsolescence | Years 5+ |

GA status is:

o Achieved when a product is available for purchase or production upgrade.

o The most current release of your Actian product.

o Product is only updated, maintained and patched at this lifecycle phase.

Any policy exceptions to the duration would be provided through additional notification through Actian support service delivery infrastructure.

## Product Support Offerings

| Support Offering | Term |
|---|---|
| Standard Support (originally Enterprise Support) | General Availability |
| Extended Support | Extended Availability |
| Obsolescence Support | Extended Availability |

## Product Support Offerings

# A. Silver Support provides:

Customers Support Liaisons have access to Actian Support Engineers during normal business hours as specified for their region. Access to the Support Portal including; online support interface, knowledge base, discussion forums,

and download site 24 hours a day, seven days a week, including holidays and can contact Actian Support via phone and the online support portal. For customers with Silver level Standard support, support for Severity 1 issues is available during business hours with a response time of 6-hours. Maximum response time for Non-Critical issues is 24 business hours.

## B. Gold Support provides:

All the benefits of Silver Support, plus: secure virtual desktop sharing, escalation management, and pro-active weekend support with prior notification. For customers with Gold level Standard support, support for Severity 1 issues is available during business hours with a response time of 2-hours. Maximum response time for Non-Critical issues is 12 business hours.

## C. Platinum Support provides provides:

All the benefits of Silver Support, Gold Support, plus: 24X7X365 emergency access to Actian Support Engineers, assigned case management, configuration management, recurring project status calls, priority issue requests, and quarterly status reports. For customers with Platinum level Standard support, support for Severity 1 issues is available 24x7x365 with a response time of 1-hour. Maximum response time for Non-Critical issues is 6 business hours.

### Detailed Support Offerings

| Services | Description | Silver Support | Gold Support | Platinum Support |
|---|---|---|---|---|
| Knowledge Base Access | 24X7 Access to our comprehensive Knowledge Base, which includes over 15,000 Tech Notes | ✓ | ✓ | ✓ |
| Multi-Channel Communication | Customers can contact Actian Support by | ✓ | ✓ | ✓ |

| | | | | |
|---|---|---|---|---|
| | phone, e-mail or online | | | |
| Customer-Designated Support Liaisons | Support Liaisons are the individuals designated by the customer with the authorization to interface with Actian Support Engineering Staff | 2 | 5 | Unlimited (Note: this is limited to 5 when purchasing 'End Point' pricing. Cases are also limited to 10 per 'end point' not including software problems). |
| New Software Releases and Updates | Customers receive access to the latest versions of Actian software and Documentation | ✓ | ✓ | ✓ |
| Collaborative Support | Customers can engage our expert Actian Support Engineers to diagnose and troubleshoot your issue(s) through our secure virtual | | ✓ | ✓ |

|  | desktop sharing solution. |  |  |  |
|---|---|---|---|---|
| Escalation Management | Customers that have project upgrades and have cases that are impacting delivery or have problems significantly impacting production negatively can escalate their case with an appropriate business justification. |  | ✓ | ✓ |
| 24x7x365 Critical Support[i] | Customers receive 24X7X365 access to Actian Support Engineering Staff |  | ✓ | ✓ |
| Weekend Assistance[ii] | Customers that have project upgrades scheduled over a weekend have access to |  |  | ✓ |

| | Support Engineering should any critical issues arise | | | |
|---|---|---|---|---|
| Assigned Case Manager | Customer is assigned a Technical Support Case Manager who is responsible for account overview and regular review of all open cases, and is available as an any-time escalation point of contact for critical issues | | | ✓ |
| Recurring Project Status Conference Calls | Customer has regularly scheduled conference calls with the dedicated contact to review and prioritize open cases and discuss project plans and new initiatives | | | ✓ |

| | | | | |
|---|---|---|---|---|
| Priority Issue Requests for Critical Issues | Customer issues are prioritized ahead of non-managed level customers' requests, allowing for quicker issue resolution | | | ✓ |
| Quarterly Status Reports | Customer is assigned a Technical Support Case Manager who is responsible for account overview and regular review of all open cases, and is available as an any-time escalation point of contact for critical issues | | | ✓ |

[i] 24X7X365 Technical Support is available for Severity 1 issues as defined in the Actian Support Policies hereand is available in English Only. During non-business hours, Actian's 24X7 support engineers will stabilize the customer application or find a suitable workaround, but final determination for root cause may extend to our regular business hours when all resources are available.

[ii] Weekend assistance will be provided for Severity 1 and Severity 2 issues as defined in the Actian Support Policies here and is available in English Only. Actian's 24X7 support engineers will stabilize the customer application or find a suitable workaround, but final determination for root cause may extend to our

regular business hours when all resources are available. Customer is responsible for providing appropriate notification, at least 30-days, and activation will only be available for the defined week-end.

**\*New Software Releases and Updates**

Actian releases Software in an X,Y,Z format as the basis for providing updates and upgrades to the software. Major Software version releases (an "X release") requires procurement of an upgrade license. Feature and function enhancements ("Y releases") and bug fixes and maintenance patches ("Z releases") shall be available for the duration of the Term of the Contract

## Extended Support

Extended Support is available from year 2 after a major version is released to year 4 after GA release. There is an additional charge (2x) for this level of support. Extended Support is the same as Standard Support with the following exceptions:

\* No certification with any new or different products/services.

\* No support for migrations of extended support versions to new or different hardware or operating systems.

\* Code fixes/patches will no longer be developed.

## Obsolescence Support

Years 5 and 6: This phase indicates that the extended support offering has expired and as such, code fixes will no longer be developed. Reasonable efforts will be provided for online support and access to existing releases and their software updates is available for 5 years through Obsolescence Support. There is an additional charge (2.5x) for this level of support.

## Post-Obsolescence Support

Years 7 and beyond: Actian Corporation at its discretion will offer continuation of Obsolescence Support upon review of each account accordingly. There is an additional charge (3x) for this level of support.

## Third Party Dependencies and the Product Support Lifecycle

As operating systems and technologies are retired by their respective vendors Actian will provide an IT planning roadmap as soon as possible to help you plan your next move. Actian will continue to provide Incident Management, Change Management and other support functions to the best of our internal capabilities, but issues concerning Problem Management and Configuration Management around new components will be restricted to the current knowledge and known

work-arounds. Actian reserves the right to announce a discontinuance of maintenance and support on platforms and database applications to coincide with the vendor's standard support policy.

## Support for Perpetual Licenses

When acquiring Support Services for a perpetual license, all licenses of the same product (irrespective of version) must be supported under an active Actian Support contract. You may not support only a subset of licenses of the same product; those licenses left unsupported must be terminated. With respect to Actian Support Services in relation to perpetual licenses, you hereby represent that you have the appropriate licenses to the Software that is subject to the Support Services.

## Reinstatement of Actian Support for Perpetual Licenses

When Support Services lapse on a DataConnect perpetual license, it can be reinstated by paying a reinstatement fee for the unsupported period, plus support for one year going forward, unless agreed otherwise between Actian and you. Unsupported licenses are not eligible for Updates, Standard Support, or any other Actian services.

# EXHIBIT H

```
Type of Work:      Computer File

Registration Number / Date:
                   TX0008902355 / 2020-10-08

Application Title: DataIntegrator 9.x Engine.

Title:             DataIntegrator 9.x Engine.

Description:       Electronic file (eService)

Copyright Claimant:
                   Actian Corporation, Transfer: By written agreement.

Date of Creation:  2007

Date of Publication:
                   2007-11-30

Nation of First Publication:
                   United States

Authorship on Application:
                   Pervasive Software, Inc., employer for hire; Citizenship:
                   United States. Authorship: computer program.

Pre-existing Material:
                   computer program.

Basis of Claim:    computer program.

Copyright Note:    C.O. correspondence.

Names:             Pervasive Software, Inc.
                   Actian Corporation

===========================================================================
```

```
Type of Work:        Computer File

Registration Number / Date:
                     TX0008902344 / 2020-10-08

Application Title: DataIntegrator 9.x UI.

Title:               DataIntegrator 9.x UI.

Copyright Claimant:
                     Actian Corporation, Transfer: By written agreement.

Date of Creation:  2007

Date of Publication:
                     2007-11-30

Nation of First Publication:
                     United States

Authorship on Application:
                     Pervasive Software, Inc., employer for hire; Citizenship:
                     United States. Authorship: computer program.

Pre-existing Material:
                     computer program, artwork.

Basis of Claim:    computer program.

Copyright Note:    C.O. correspondence.

Names:               Pervasive Software, Inc.
                     Actian Corporation

================================================================================
```

```
Type of Work:      Computer File

Registration Number / Date:
                   TX0008902360 / 2020-10-08

Application Title: DataConnect 10.6 Engine.

Title:             DataConnect 10.6 Engine.

Description:       Electronic file (eService)

Copyright Claimant:
                   Actian Corporation.

Date of Creation:  2016

Date of Publication:
                   2016-03-31

Nation of First Publication:
                   United States

Authorship on Application:
                   Actian Corporation, employer for hire; Citizenship: United
                        States. Authorship: computer program.

Pre-existing Material:
                   computer program.

Basis of Claim:    computer program.

Copyright Note:    C.O. correspondence.

Names:             Actian Corporation

===============================================================================
```

```
Type of Work:      Computer File

Registration Number / Date:
                   TX0008902319 / 2020-09-28

Application Title: DataConnect 10.6 UI.

Title:             DataConnect 10.6 UI.

Description:       Electronic file (eService)

Copyright Claimant:
                   Actian Corporation.

Date of Creation:  2016

Date of Publication:
                   2016-03-31

Nation of First Publication:
                   United States

Authorship on Application:
                   Actian Corporation, employer for hire; Citizenship: United
                        States. Authorship: computer program.

Pre-existing Material:
                   computer program, artwork.

Basis of Claim:    computer program.

Copyright Note:    C.O. correspondence.

Names:             Actian Corporation
```

================================================================================

```
Type of Work:       Computer File

Registration Number / Date:
                    TX0008898417 / 2020-09-28

Application Title: DataConnect 11.6 Engine.

Title:              DataConnect 11.6 Engine.

Description:        Electronic file (eService)

Copyright Claimant:
                    Actian Corporation.

Date of Creation:   2020

Date of Publication:
                    2020-09-28

Nation of First Publication:
                    United States

Authorship on Application:
                    Actian Corporation, employer for hire; Citizenship: United
                      States. Authorship: computer program.

Pre-existing Material:
                    computer program.

Basis of Claim:     computer program.

Names:              Actian Corporation

===============================================================================
```

Type of Work:       Computer File

Registration Number / Date:
                    TX0008899134 / 2020-09-30

Application Title: DataConnect 11.6 UI.

Title:              DataConnect 11.6 UI.

Description:        Electronic file (eService)

Copyright Claimant:
                    Actian Corporation.

Date of Creation:  2020

Date of Publication:
                    2020-09-28

Nation of First Publication:
                    United States

Authorship on Application:
                    Actian Corporation, employer for hire; Citizenship: United
                        States. Authorship: computer program, artwork.

Pre-existing Material:
                    computer program, artwork.

Basis of Claim:    computer program, artwork.

Copyright Note:    C.O. correspondence.

Names:             Actian Corporation

================================================================================

**Registration #:** TX0009058230
**Service Request #:** 1-11049974105

## Mail Certificate

Arent Fox LLP
Thorne Maginnis
1717 K Street, NW
Washington, DC 20006-5344 United States

**Priority:** Special Handling    **Application Date:** January 03, 2022
**Note to C.O.:** If there are any issues with the application, please contact the following individuals by email: Thorne.
Maginnis@arentfox.com; Karolyn.Richter@arentfox.com; and tmdocket@arentfox.com.

## Correspondent

**Organization Name:** Arent Fox LLP
**Name:** Thorne Maginnis
**Email:** tmdocket@arentfox.com
**Telephone:** (202)857-6000
**Address:** 1717 K Street, NW
Washington, DC 20006 United States

**Registration Number**

# TX 9-058-230

**Effective Date of Registration:**
January 03, 2022
**Registration Decision Date:**
January 06, 2022

## Title _____

Title of Work: Data Integrator 8.12 Engine

## Completion/Publication _____

Year of Completion: 2006
Date of 1st Publication: September 20, 2006
Nation of 1st Publication: United States

## Author _____

- **Author:** Pervasive Software, Inc.
  Author Created: computer program
  Work made for hire: Yes
  Domiciled in: United States

## Copyright Claimant _____

Copyright Claimant: Actian Corporation
710 Hesters Crossing Road, Suite 250, Round Rock, TX, 78691, United States
Transfer statement: By written agreement

## Limitation of copyright claim _____

Material excluded from this claim: Previously published computer code

New material included in claim: New computer code.

## Rights and Permissions _____

Organization Name: Arent Fox LLP
Name: Thorne Maginnis
Email: tmdocket@arentfox.com
Telephone: (202)857-6000
Address: 1717 K Street, NW

Washington, DC 20006 United States

## Certification

| | |
|---:|:---|
| **Name:** | Thorne Maginnis |
| **Date**: | January 03, 2022 |
| **Applicant's Tracking Number**: | 041713.00tba |

**Registration #:**   TX0009058232
**Service Request #:**   1-11049932952

## Mail Certificate

Arent Fox LLP
Thorne Maginnis
1717 K Street, NW
Washington, DC 20006-5344 United States

**Priority:**   Special Handling          **Application Date:**   January 03, 2022
**Note to C.O.:** If there are any issues with the application, please contact the following individuals by email:  Thorne.
Maginnis@arentfox.com;  Karolyn.Richter@arentfox.com; and tmdocket@arentfox.com.

## Correspondent

**Organization Name:**   Arent Fox LLP
**Name:**   Thorne Maginnis
**Email:**   tmdocket@arentfox.com
**Telephone:**   (202)857-6000
**Address:**   1717 K Street, NW
Washington, DC 20006 United States

**Registration Number**

# TX 9-058-232

**Effective Date of Registration:**
January 03, 2022
**Registration Decision Date:**
January 06, 2022

## Title _____

|  |  |
|---|---|
| **Title of Work:** | Data Integrator 8.12 UI |

## Completion/Publication _____

|  |  |
|---|---|
| **Year of Completion:** | 2006 |
| **Date of 1st Publication:** | September 20, 2006 |
| **Nation of 1st Publication:** | United States |

## Author _____

|  |  |
|---|---|
| • **Author:** | Pervasive Software, Inc. |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant _____

|  |  |
|---|---|
| **Copyright Claimant:** | Actian Corporation |
|  | 710 Hesters Crossing Road, Suite 250, Round Rock, TX, 78691, United States |
| **Transfer statement:** | By written agreement |

## Limitation of copyright claim _____

|  |  |
|---|---|
| **Material excluded from this claim:** | Previously published computer code |
| **New material included in claim:** | New computer code. |

## Rights and Permissions _____

|  |  |
|---|---|
| **Organization Name:** | Arent Fox LLP |
| **Name:** | Thorne Maginnis |
| **Email:** | tmdocket@arentfox.com |
| **Telephone:** | (202)857-6000 |
| **Address:** | 1717 K Street, NW |

Washington, DC 20006 United States

## Certification

| | |
|---:|:---|
| **Name:** | Thorne Maginnis |
| **Date:** | January 03, 2022 |
| **Applicant's Tracking Number:** | 041713.00tba |

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-260-777**

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 15, 2023

## Title

| | |
|---|---|
| **Title of Work:** | Data Integrator v. 9.2.6.6 Engine |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2013 |
| **Date of 1st Publication:** | January 09, 2013 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| **Author:** | Pervasive Software, Inc. |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Actian Corporation |
| | 330 Potrero Avenue, Sunnyvale, CA, 94085, United States |
| **Transfer statement:** | By written agreement |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | computer program, third party code |
| **Previous registration and year:** | TX0008902355, 2020 |
| | TX0009058230, 2022 |
| **New material included in claim:** | computer program |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Hatch Law PC |
| **Name:** | Ryan Hatch |
| **Email:** | ryan@hatchlaw.com |

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-260-366

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

---

## Title

| | |
|---|---|
| **Title of Work:** | Data Integrator v. 9.2.6.6 UI |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2013 |
| **Date of 1st Publication:** | January 09, 2013 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Pervasive Software, Inc. |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Actian Corporation |
| | 330 Potrero Avenue, Sunnyvale, CA, 94085, United States |
| **Transfer statement:** | By written agreement |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | computer program, third party code |
| **Previous registration and year:** | TX0008902344, 2020 |
| | TX0009058232, 2022 |
| **New material included in claim:** | computer program |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Hatch Law PC |
| **Name:** | Ryan Hatch |
| **Email:** | ryan@hatchlaw.com |

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-260-358

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

---

## Title

**Title of Work:** Data Integrator v. 9.2.7.10 Engine

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** May 16, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program
**Previous registration and year:** TX0008902355, 2020
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch
**Email:** ryan@hatchlaw.com
**Telephone:** (310)279-5076

**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-260-792**

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 15, 2023

## Title

**Title of Work:** Data Integrator v. 9.2.7.31 Engine

## Completion/Publication

**Year of Completion:** 2014
**Date of 1st Publication:** March 06, 2014
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** pending
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch
**Email:** ryan@hatchlaw.com
**Telephone:** (310)279-5076

**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-260-352

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

## Title

**Title of Work:** Data Integrator v. 9.2.7.31 UI

## Completion/Publication

**Year of Completion:** 2014
**Date of 1st Publication:** March 06, 2014
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States
**Transfer statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** pending
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch
**Email:** ryan@hatchlaw.com

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director



**Registration Number**

## TX 9-260-337

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

---

## Title

**Title of Work:** DataConnect v. 11.3.0.24 Engine

## Completion/Publication

**Year of Completion:** 2018
**Date of 1st Publication:** October 29, 2018
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
**Author Created:** computer program
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States
**Transfer statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** TX0008902360, 2020
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch
**Email:** ryan@hatchlaw.com

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-260-202

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

---

**Title** _____

**Title of Work:**  DataConnect v. 11.3.0.24 UI

**Completion/Publication** _____

**Year of Completion:**  2018
**Date of 1st Publication:**  October 29, 2018
**Nation of 1st Publication:**  United States

**Author** _____

- **Author:**  Actian Corporation
  **Author Created:**  computer program
  **Work made for hire:**  Yes
  **Citizen of:**  United States

**Copyright Claimant** _____

**Copyright Claimant:**  Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

**Limitation of copyright claim** _____

**Material excluded from this claim:**  computer program, third party code
**Previous registration and year:**  TX0008902319, 2020
pending

**New material included in claim:**  computer program

**Rights and Permissions** _____

**Organization Name:**  Hatch Law PC
**Name:**  Ryan Hatch
**Email:**  ryan@hatchlaw.com

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes
**Copyright Office notes:** Regarding previous registration: Registration number added from Copyright Office records.

# Certificate of Registration





This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-260-786

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 15, 2023

## Title

| | |
|---|---|
| **Title of Work:** | DataConnect v. 11.5.2.11 Engine |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2019 |
| **Date of 1st Publication:** | December 20, 2019 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Actian Corporation |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Actian Corporation |
| | 330 Potrero Avenue, Sunnyvale, CA, 94085, United States |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | computer program, third party code |
| **Previous registration and year:** | TX0008898417, 2020 |
| | TX0008902360, 2020 |
| **New material included in claim:** | computer program |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Hatch Law PC |
| **Name:** | Ryan Hatch |
| **Email:** | ryan@hatchlaw.com |
| **Telephone:** | (310)279-5076 |

|  |  |
|---|---|
| **Alt. Telephone:** | (310)435-6374 |
| **Address:** | 13323 W. Washington Blvd. |
|  | Suite 302 |
|  | Los Angeles, CA 90066 United States |

## Certification

|  |  |
|---|---|
| **Name:** | Ryan E. Hatch |
| **Date:** | May 11, 2023 |

|  |  |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding previous registration: Registration number added from Copyright Office records. |

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director



**Registration Number**

## TX 9-260-292

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

## Title

**Title of Work:** DataConnect v. 11.5.2.11 UI

## Completion/Publication

**Year of Completion:** 2019
**Date of 1st Publication:** December 20, 2019
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** pending
TX0008902319, 2020

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch

| | |
|---|---|
| **Email:** | ryan@hatchlaw.com |
| **Telephone:** | (310)279-5076 |
| **Alt. Telephone:** | (310)435-6374 |
| **Address:** | 13323 W. Washington Blvd. |
| | Suite 302 |
| | Los Angeles, CA 90066 United States |

## Certification

| | |
|---|---|
| **Name:** | Ryan E. Hatch |
| **Date:** | May 11, 2023 |

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director



**Registration Number**

## TX 9-260-356

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

## Title

**Title of Work:** DataConnect v. 11.5.2.28 Engine

## Completion/Publication

**Year of Completion:** 2020
**Date of 1st Publication:** February 26, 2020
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** pending
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch
**Email:** ryan@hatchlaw.com

**Telephone:** (310)279-5076
**Alt. Telephone:** (310)435-6374
**Address:** 13323 W. Washington Blvd.
Suite 302
Los Angeles, CA 90066 United States

## Certification

**Name:** Ryan E. Hatch
**Date:** May 11, 2023

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-260-304**

**Effective Date of Registration:**
May 11, 2023
**Registration Decision Date:**
May 12, 2023

## Title

**Title of Work:** DataConnect v. 11.5.2.28 UI

## Completion/Publication

**Year of Completion:** 2020
**Date of 1st Publication:** February 26, 2020
**Nation of 1st Publication:** United States

## Author

- **Author:** Actian Corporation
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Actian Corporation
330 Potrero Avenue, Sunnyvale, CA, 94085, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, third party code
**Previous registration and year:** pending
pending

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Hatch Law PC
**Name:** Ryan Hatch

Page 1 of 2

|             |                                      |
|-------------|--------------------------------------|
| **Email:**  | ryan@hatchlaw.com                    |
| **Telephone:** | (310)279-5076                     |
| **Alt. Telephone:** | (310)435-6374                 |
| **Address:** | 13323 W. Washington Blvd.           |
|             | Suite 302                            |
|             | Los Angeles, CA 90066 United States  |

## Certification

|           |                |
|-----------|----------------|
| **Name:** | Ryan E. Hatch  |
| **Date:** | May 11, 2023   |

**Correspondence:** Yes